No. 2320.

W. P. HAMBLEN ET AL. *v.* FOLTS & WALSH.

1. LIEN—FORECLOSURE.—The transfer of a note given to secure the purchase money for land, either when there is an express or implied lien reserved in the deed or other instrument, carries with it the lien on the land, which the assignee may enforce by foreclosure procedings.
2. SUPERIOR TITLE—VENDOR AND VENDEE—ELECTION.—In all executory contracts for the conveyance of land, whether evidenced by bond for title or deed, which retains a lien to secure unpaid purchase

money, or deed and mortgage, cotemporaneously made to secure deferred payments, the superior title remains with the vendor until the contract price is paid. In default of payment the vendor may elect to sue for unpaid purchase money or disaffirm the contract and recover the land.

3. SAME.—The vendor's title to land, existing under an executory contract, does not pass by a mere assignment of the purchase money notes, and the assignee can not therefore obtain possession of the land in default of payment. In such a case the vendor holds the legal title in trust, whoever may become ultimately entitled to the land. But if the assignee of unpaid purchase money notes receives from the original vendor in an executory contract for the sale of land, a transfer of his superior title which exists until the contract of sale is consummated by complete payment, such assignee is subrogated to all the rights of the original vendor, and may enforce his rights by sale of the land in default of payment, though a note be barred by limitation.

4. EQUITY.—A court of equity will not permit a vendor in an executory contract to disaffirm it for nonpayment of purchase money notes when the vendee is willing to complete payment, and the vendor has already received part of the purchase money, or when valuable improvements have been made by the vendee, or when from any reason it would be inequitable for the vendor to recover possession.

APPEAL from Liberty. Tried below before the Hon. Edwin Hobby.

*E. P. Hamblen,* for appellant: The assignee of a note given for the purchase money of land, where an express lien is retained in the deed, does not thereby acquire the superior title to the land, or a right to the possession thereof, and his only remedy, if the note is not paid, is by suit for foreclosure of his lien, and it was error for the court below to hold otherwise. (Elliott v. Blane, 54 Texas, 218; Baker v. Compton, 52 Texas, 262; Cassady v. Frankland, 55 Texas, 452.)

Sydnor, the vendor of the land, having transferred and assigned to W. B. Scott the two first notes mentioned in his deed to Hamblen, and after the maturity of the third note, having collected one-half of the amount due therefor, and having changed the balance due thereon from a demand for cotton to a moneyed demand, and then having transferred and assigned said note, together with the remaining note due for said land, to appellees, thereby ratified said sale, and it became an executed contract. (Tom v. Wollhoefer, 61 Texas, 281; Coddington v. Wells, 59 Texas, 49.)

*Davis & Sayles,* for appellees.

MALTBIE, JUDGE. Appellees Folts & Walsh sued appellants, who are the executors, devisees and vendees of Mrs. Annie E. Hamblen, to recover the amount of a note, and to foreclose the vendor's lien on a tract of land in Liberty county, or if not entitled to this relief, for a recovery of the land, averring that they own the superior title. The case was tried by the court without a jury, and a general judgment rendered that appellees recover the land, unless appellants will pay off and discharge the note sued on, and interest, within ninety days from the rendition of the judgment.

It appears that John B. Sydnor was the owner of the land in controversy, and that he sold and conveyed it to Henry Hamblen on a credit, on the eleventh day of January, 1871, taking four notes to secure the purchase money, two payable in coin and two in cotton. The deed from Sydnor was of special warranty, and contained a clause retaining a lien in express terms on the land to secure the payment of the notes, and at the same time, according to the testimony of Folts, Hamblen executed a mortgage to Sydnor on the land for the same purpose.

Hamblen paid the first two notes and about one-half of the third. The last two notes matured respectively on the first day of January, 1872, and on the first day of January, 1873, were for twenty bales of cotton each, payable to the order of John B. Sydnor, and were by him, for value paid, indorsed and assigned to Folts & Walsh on the first day of January, 1873. And on the same day Sydnor, by an instrument in writing, for value received, also transferred to Folts & Walsh all of his right and title to the land. In July, 1872, Henry Hamblen executed a deed of trust to D. L. Russell, trustee, to the land in controversy, to secure a debt to A. Sessums, Powell & Co. On the seventh of January, 1884, the trustee sold the land, in pursuance of the deed, Annie E. Hamblen becoming the purchaser through her husband, W. P. Hamblen, at the sum of four thousand eight hundred and fifty dollars.

The land was sold subject to the rights of Folts & Walsh, and Annie E. and W. P. Hamblen had notice of the same, actual and constructive, at and before the sale. Annie E. Hamblen and her assignees have been in the actual possession of the land ever since, but have not claimed it adversely to appellees, and have recognized the validity of their lien, and made continuous promises from time to time to pay the note for the purchase money up to within a short time before the institution of

this suit on the twenty-fifth day of September, 1883.    The land and improvements were shown to be worth ten thousand dollars; its rental value per annum from seven hundred and fifty to one thousand dollars, while appellants proved that they had during their occupancy, put six thousand dollars worth of improvements upon it.    After Annie E. Hamblen purchased the land, her husband, W. P. Hamblen, paid the balance due on one of the notes executed by Henry Hamblen to Sydnor, and on the twenty-seventh of April, 1875, indorsed on the remaining one held by Folts & Walsh, "I hereby agree that this obligation shall be as follows: there is due on the same seventeen hundred and fifty dollars in gold on the first day of January, 1875, to bear ten per cent interest per annum from that date.    Annie E. Hamblen, per W. P. Hamblen, agent."    Also the following: "Statute of limitations waived, and I promise to pay the same. Dec. 16, 1878.    W. P. Hamblen, agent of Annie E. Hamblen" Payments were made on the notes from time to time by W. P. Hamblen.    Mrs. Annie E. Hamblen died testate on the twenty-sixth of March, 1879, bequeathing all that portion of the land that she had not previously conveyed to her mother, to her children, making W. P. Hamblen and Henry Hamblen independent executors of her will, both of whom duly qualified, are appellants herein, and were defendants below, and pleaded the general denial and the statute of limitations of four and of ten years, and stale demand.

It is well settled in this State that the transfer of a note given to secure the purchase money of land, either where there is an express or implied lien reserved in the deed or other instrument, carries with it the lien on the land, and that the assignee has the right to have the lien foreclosed and the land sold in satisfaction of the note.    It is also settled that in all executory contracts for the conveyance of land, whether in form of a bond for title or deed expressly retaining a lien to secure the purchase money, or an absolute deed and mortgage simultaneously executed to secure the payment of the purchase money, the superior title remains in the vendor until the money is paid, and that the vendor may, when the vendee fails and refuses to pay the purchase money, recover possession of the land; and it is equally as well settled that the title to the land does not pass by an assignment of the note, and for that reason the assignee can not recover possession of the land under any circumstances.    If a vendor under an executory contract has

assigned the purchase money notes, he holds the legal title to
the land in trust for both the vendee and assignee of the notes,
or for whoever may become ultimately entitled to the land.
(Russell & Seisfeld v. Kirkbride, 62 Texas, 457; Catlin v. Ben-
nett, 47 Texas, 170; Rogers v. Blum, 56 Texas, 6.)

It has not, so far as we are advised, ever been decided in
Texas, when the vendor in an executory contract for a valu-
able consideration assigns the notes given for the purchase of
land, and at the same time conveys the legal title to the land
to the assignee of the notes, whether such assignee can, by
virtue of the assignment of the notes and the conveyance of
the legal title of the land, under any circumstances recover
possession of the land from the original vendee or his as-
signee.

It is said in Pomeroy's Equity, volume 3, section 1261, page
270, that the vendor holds the legal title as security for the per-
formance of the vendee's obligation, and as trustee for the ven-
dee, subject to such performance, and that the title may be
conveyed or devised, and will descend to his heirs. We think
it can not be questioned but that this legal title not only de-
scends to the vendor's heirs, but that they might enforce it
under the same circumstances as the ancestor might have done
were he in life. Public policy demands that all property rights
should be the suject of alienation, and if a party purchases this
title in our opinion he may assert it under the same circum-
stances that the vendor could have done, there being no per-
sonal trust or confidence existing between vendor and vendee
that would preclude either from transferring all of his rights to
another. It is contended by appellants that Sydnor did not,
and in fact could not under the facts of this case, transfer the
superior title to the land to Folts & Walsh. We think that the
written transfer, heretofore referred to, conveyes all the right
and title to the land, as well as the notes from Sydnor, to Folts
& Walsh. If there could be any doubt of this, the testimony
of Folts, admitted without objection, conclusively shows that
it was the intention of all of the parties that all of Sydnor's
right and title to the land should vest in Folts & Walsh, and
that such intention was expressed in the writings.

Upon the other proposition the contention is that in execu-
tory contracts, where several notes are executed and the vendee
pays one of them, or the vendor transfers one or more of them,
the contract thereby becomes executed and the title to the land

vests in the vendee.  It is true that when the vendee is willing to perform the contract, and the vendor has received a part of the consideration, or has delayed for an unreasonable time to ask for a rescission, so that the vendee would have the right to conclude that strict performance on his part would not be insisted upon, and under that apprehension has made valuable improvements on the land; or when for any reason it would be inequitable for the vendor to recover possession of the land, a court of equity will not permit him to do so.  And the question at last in every case must be, is a rescission inequitable under the rules laid down by the courts, or has the vendee forfeited all right to perform the contract and obtain the land.

There is no case that holds that an executory contract has become executed until all of the purchase money has been paid, though there are many that hold that the vendor will not be permitted to recover the land on account of part performance by the vendee, and for other reasons also when it would be inequitable, but not because the contract had become executed.

The appellants, though not the original vendees, undertook and promised to pay the note sued upon, and even indulged at their own special instance and request by the appellees for a series of years, and when at last called upon through the courts to perform their undertaking, without any pretense of having paid the note, they invoke the statute of limitations and the plea of stale demand to defeat a recovery.  The note being barred, no judgment could be entered on it.  Will the fact that appellants have paid three-fourths of the purchase money and expended six thousand dollars in improvements, and have been permitted to occupy the land for sixteen or seventeen years without interruption, render it inequitable for appellees to assert their superior title to the land, when their claim for the balance of the purchase money is cut off by the plea of the statute of limitations voluntarily interposed by appellants.  The court below thought not.  The judgment is a righteous one, and should be affirmed, but inasmuch as several of the appellants are minors we are of opinion that these should be granted ninety days from the rendition of this judgment in which to pay the sum of one thousand nine hundred and thirteen dollars and twenty-five cents, the amount rendered in the district court of Liberty county, with ten per cent interest per annum on said sum from the eighteenth day of August, 1886, the date of the rendition of the judgment, and in default of

payment that appellees recover said tract of land and be forever quieted in their title and possession, that a writ of possession issue; and that notwithstanding that the judgment of the district court is reformed, that the appellants be taxed with all costs of suit in the district court and in this court.

*Reformed and rendered.*

Opinion adopted February 28, 1888.