HUMPHREYS-MEXIA COMPANY ET AL. v. J. L. GAMMON ET AL.

No. 3899.   Decided June 30, 1923.

(254 S. W., 296.)

### 1.—Deed—Reservation of Lien—Exception of Mineral Rights.

A conveyance reserving to the grantor the right to minerals and mining is as effectual to sever dominion over these from that over the surface soil as a separate conveyance of the mineral rights from the owner of the land to another; nor does it cease to have this effect when the grantor also reserves an express lien on the estate granted to secure payment of purchase money notes given therefor.   (Pp. 255-260).

### 2.—Same—Executory Contract.

A conveyance of land by which an express lien is reserved to secure payment of purchase money is an executory contract only in a qualified sense, and between vendor and vendee; as against all but the vendor the purchaser acquires full title. The vendor retains only a naked legal title for security of his lien, with power to rescind the sale and recover the land on default in payment, and beyond this holds only in trust for the purchaser, the land passing to him without other conveyance on payment of the debt.   (Pp. 256-259).

### 3.—Same—Merger of Estates.

The title to minerals reserved by a grantor of land cannot merge with his legal title remaining by reason of his retention of lien, for the purchase money. The two titles (to the minerals and to the surface soil) remain distinct; and each is held in fee simple, by the vendor and by the purchaser respectively. They cannot merge in the former, to the extinguishment of his separate title to the minerals for the reasons following:

(a)   The doctrine of merger applies only to the holding of less and greater estates in land, as one for years with the estate in fee, and not to separate divisions of the land,. vertically or horizontally, each held alike in fee simple.   (Pp. 260-261).

(b)   Merger can only take place where the two estates are held in the same right, not where the owner holds one in his own right and another as trustee.   (P. 261).

(c)   The existence of an intermediate estate, such as the equitable one of the purchaser in this case, will prevent the merger of the title to the minerals with the fee retained by the vendor.   (Pp. 261, 262).

(d)   The doctrine of merger does not apply where, as here, the evident intention of the parties is that the estates should not merge.   (P. 262).

#### 4.—Deed—Reservation of Minerals—Reservation of Purchase Money Lien— Transfer.

A vendor of land reserved all mineral rights to himself, and also reserved a lien on the land conveyed to secure the purchase money notes. These he assigned to another and also transferred to him all his right, title and interest in "said land." This meant the land he had conveyed—the soil with the mineral rights reserved. It passed only his naked legal title for the security of the notes, and did not convey to the assignee his mineral rights in the land.   (Pp. 262, 263).

#### 5.—Same—Immaterial Errors.

Errors in the trial court become immaterial where the only correct judgment was that reached by it.   (P. 264).

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Limestone County.

Gammon and others sued Kennedy and others for the recovery of land.  Judgment for defendants was reversed and rendered for plaintiffs on their appeal (244 S. W., 162) and appellees obtained writ of error on separate application of Kennedy and others and of the Shear Company.

*W. J. Bryant, Vinson, Elkins, Wood & Pollard,* and *C. C. & J. E. Bradley,* for plaintiffs in error.

The Court of Civil Appeals erred to the prejudice of these petitioners in holding that the instrument, of date January 29th, 1900, executed by Kennedy to Rotan Grocery Company "should have been construed by the court in the light of its own terms," and in construing same as a deed of conveyance of the land.  By its recitals it connects itself with the deed from C. A. Kennedy to F. M. Sanches, of date September 30th, 1899, in which a vendor's lien was retained to secure the purchase money notes transferred by it to Rotan Grocery Company, and the deed and transfer relating to the same matter must be considered and construed together, and effect given to the intention of the parties as expressed in the two instruments; and it is clear from a consideration of the language of the two instruments together that the deed controls the transfer as to the property intended to be conveyed, because the transfer subordinates itself to the

deed, its purpose appearing to be merely to transfer the lien on the land securing the notes. Sanborn v. Crowdus, 100 Texas, 605, 102 S. W., 719; Ramsden v. Hylton, 2 Vesey, 304; Payler v. Homersham, 22 Eng. R. Cas., 904; Rhodes v. Weldy, 20 N. E., 461; Raymond v. Cleveland, 42 Ohio St., 529.

A deed of conveyance of land, with all appropriate terms of habendum, tenendum and warranty, reserving a lien to secure unpaid purchase money, passes the title to the grantee; and it is not true that the superior title or estate, or any estate, remains in the grantor, except in the sense that grantee may not hold the land without paying for it. But no such estate is retained as will enable grantor to convey it, unless and until there is a default in the payment of purchase money. Miley v. Deer, 76 S. E., 28; Carey v. Starr, 93 Texas, 508, 56 S. W., 324; Upon Severance of estate, see: Lyles v. Dodge, 228 S. W., 318; Ruling Case Law, Vol. 18, p. 1175, Mines; Archers' Oil & Gas. p. 841 and Authorities; Morrison's Oil & Gas, p. 18; Green v. W. Company, 225 S. W., 552; Wallace v. Hoyt, 225 S. W., 425; Davis v. Texas Co., 232 S. W., 553; Scott v. Laws, 215 S. W., (Ky.) 82; Wallace v. Coal Company, 52 S. E., (W. Va.) 485; Wallace v. Hoyt, 225 S. W., 425; Luse v. Parmer, 221 S. W., 1031; Davis v. Texas Co., 232 S. W. 555; Thornton Oil & Gas, Vol. 1, Sec. 336; Morrison Oil & Gas, page 18; 18 Ruling Case Law, 1207; Wallace v. Coal Co., 52 S. E., (W. Va.) 485; Coal Company v. Lloyd, 52 N. E. (Ill.) 144; 18 Ruling Case Law, Mines, Sec. 1178; 2 Corpus Juris, 71, Sec. 39; 1 Cyc., 994; West Digest, Mines, Sec. 49.

So far as our investigation has gone, the definition of merger of estates, whatever the phraseology used, embraces the requirement that the two merging estates be "without any intermediate estate" (1 & 2 Words & Phrases, Estate-Merger; 2 Pom. Eq. Juris, Sec. 786; 21 C. J., p. 1033, et seq; Bagley v. McCarty 104, N. W. (Minn.) 7; Asch v. Asch, 21 N. E. (N. Y.) 70; Bassett v. O'Brien, 51 S. W. (Mo.) 107).

Where it appears that it was the purpose and intent of the parties —especially of the one holding two estates—that they should be held separately and should not merge, they do not merge, nor will a merger take place where inequity or injustice will result from it, or where it is to the best interest of the party holding the two estates that they continue separate. Authorities cited above on merger.

*J. D. Williamson,* for Shear Co.

Where in the granting clause of a deed the land described is conveyed subject to the reservation of mineral rights in a prior deed referred to as a part of that conveyance, such oil and minerals are excepted or reserved from said conveyance, and are not conveyed

thereby.   Koenigheim v. Miles, 67 Texas, 114; Watkins v. Tucker, 84 Texas, 428; Bartell v. Kelsey, 59 S. W., 631; Steinbeck v. Stone, 53 Texas, 382; Land Company v. Chisholm, 71 Texas, 523; Cravens v. White, 73 Texas, 577; Henry v. Whitaker, 82 Texas, 5; Hopkins v. Hopkins, 103 Texas, 15; Cunningham v. Buckingham, 111 S. W., ,766; Graves v. Fancher, 81 N. J. Eq., 407, 517; Donnell v. Otts, 230 S. W., 864; Allen v. Henson, 217 S. W., 121; Percival v. Williams, 74 Atl., 321.

Where by reservation or exception in a deed, the title to the oil and minerals under a tract of land is reserved or excepted by the grantor from such conveyance, a separate estate is created as to such oil and gas, and such estate thereafter passes only by conveyance.   States Oil Corporation v. Ward, 236 S. W., 446; Donnell v. Otts, 230 S. W., 864; Wallace v. Hoyt, 225 S. W., 425; Luse v. Boatman, 217 S. W., 1096; Luse v. Parmer, 221 S. W., 1031; Lyles v. Dodge, 228 S. W., 316.

A deed shall be construed according to the intention of the parties, and especially that of the grantor, from the words which have been employed in connection with the subject matter, and the deed shall be so construed that the intention thus expressed shall be carried out.

Counsel for The Shear Company do not contend that any new rights were created in The Shear Company in the conveyance made by it to Mrs. Jasper K. Smith.   In other words, no new rights were created by reservation as that term is correctly defined; that is, "the reservation by a grantor of some new thing out of that granted before;" but The Shear Company excepted from its deed the oil reserved in the deed from Kennedy to Sanches.   That is, it did not convey it.

Exception in that deed created no new right in The Shear Company, but it left title to the oil as it was at the time The Shear Company made its conveyance.

With the two estates existing in said land, Kennedy made a conveyance.   At the time of that conveyance the land had been conveyed to Sanches from the dome of heaven to the bowels of the earth, and in said land so conveyed Kennedy had an estate in the oil, which necessarily existed in the land conveyed to Sanches, hence Kennedy's estate was in the land conveyed to Sanches.   In Kennedy's conveyance he uses the following language:   "And have and do hereby bargain, sell and quitclaim all of my right, title, interest, estate, claim and demand, both legal and equitable in and to said land and every part thereof.   Where was the Kennedy estate in the oil located?   It was in said land conveyed to Sanches.

The instrument executed by Kennedy was a deed under the Revised Statutes, Article 1106, and the following cases decided by this Court:   Garrett v. Christopher, 74 Texas, 453; Smith v. Crosby, 86 Texas, 15; Lindsay v. Freeman, 83 Texas, 259; Baldwin v. Drew, 244

S. W., 987; Merrill v. Bradley, 102 Texas, 481; Cook v. Smith, 107 Texas, 119.

It being a deed it conveyed the greatest interest and the greatest estate that could be conveyed by the language used.

An estate in oil is an estate in land. There may be two estates in the same tract of land, but, both estates are in said land. Said land conveyed to Sanches was the said land in which Kennedy's estate existed.

*J. L. Gammon, Callicutt & Johnson, Leon Harp, Templeton, Beall, Williams & Worsham,* and *A. S. Rollins,* for defendants in error.

The deed and transfer executed by C. A. Kennedy to Rotan Grocery Company, dated January 29th, 1900, conveyed to the grantee, all the right, title, interest, estate, claim and demand, both legal and equitable, that the said C. A. Kennedy had in and to the said land. This included the minerals reserved in his deed to Sanches. Vernon's Sayles, Civ. Stats., art. 1106; Ragsdale v. Mays, 65 Texas, 255; Smith v. Crosby, 86 Texas, 15; Taylor v. County School Trustees, 229 S. W., 671; Luse v. Penn, 220 S. W., 303; Donnell v. Otts, 230 S. W., 864; 13 Cyc., 656; Merrill v. Bradley, 102 Texas, 481; Merriman v. Blaylock, 121 S. W., 552; Texas Co. v. Daugherty, 176 S. W., 717; Swayne v. Lone Acre Oil Co., 86 S. W., 740; Garrett v. Christopher, 74 Texas, 453; Moore v. Swift, 67 S. W., 1066; Bedford v. Rayner Cattle Co., 35 S. W., 933; West Seattle Land Co. v. Novelty Mill Co., 72 Pac., 72; Balch v. Arnold, 59 Pac., 436; Laughlin v. Tips, 28 S. W., 552; Kempner v. Beaumont Lumber Co., 49 S. W., 414; Sequatchie v. Sewanee, 193 S. W., 106.

The deed from C. A. Kennedy to F. M. Sanches, dated September 30th, 1899, having expressly reserved a vendor's lien to secure the payment of the five purchase money notes, was an executory contract, and the superior title to the land remained in Kennedy until his conveyance became executed by the payment of the notes. The minerals having been reserved in the deed by apt language, the title thereto never passed from Kennedy by the deed, but at all times reposed in him, so that under the doctrine of merger the retention of the superior title to the land, which included the minerals, as well as the surface, precluded the technical severance attempted by the reservation. Therefore, the conveyance of the superior title and of his right, title, interest, estate, claim and demand, both legal and equitable, by the deed and transfer dated January 29th, 1900, divested him of any title to the minerals, and vested same in the Rotan Grocery Co. Am. & Eng. Enc. of Law (2d Ed.) Vol. 6, 515, Vol. 9, 142; Whitlocks Case, 8 Coke, 71; Allen v. Henson, 217 S. W., 121; 2 Devlin on Deeds, 1830, 1834; Burchard v. Walther, 78 N. W., 1061; Bartell v. Kelsey, 59 S. W., 631; Wadsworth v. Vinyard, 131 S. W., 1171; Ragsdale v.

Mays, 65 Texas, 255; Cauble v. Worsham, 96 Texas, 93; 13 Cyc. 672; Choate v. Johns. 15 S. W., 106; Hanrick v. Gurley, 48 S. W., 994; Wendall v. Fisher, 72 N. E., 322; Sirmans v. Milltown Lumb. Co., 60 S. E., 267; Salter v. California Cycle Way Co., 93 Pac., 1045; Knapp v. Wolverton, 11 N. W., 164.

The deed and transfer executed by C. A. Kennedy to Rotan Grocery Company, dated January 29th, 1900, being plain and unambiguous and there being no proof that it was executed through fraud, accident or mistake, the intention of C. A. Kennedy to convey or not to convey the minerals by such instrument, could not be made an issue of fact by reason of recitals contained in instruments executed by C. A. Kennedy twenty years later; nor by the testimony of Kennedy on the trial, to the effect that he did not intend to convey the minerals by such instrument. Fellows v. Dorsey, 157 S. W., 995; Penn v. Hare, 223 S. W., 527; Crescent Stave Co. v. Brown, 205 S. W., 937; Mount v. Neighbors, 189 S. W., 614; Pittsburg Steel Co. v. Wood, 160 S. W., 519.

The recitals made by Kennedy in his conveyance to Humphreys, and the recitals in mineral deeds subsequently executed by Humphreys, and others, was inadmissible, and could furnish no basis for reading into the deed and transfer from Kennedy to Rotan Grocery Company any reservation or exception not expressed in such instrument.

It was error to permit the witness C. A. Kennedy, over objections, to testify that he did not intend, by the deed and transfer to Rotan Grocery Company, to convey to said Company the oil, gas and other minerals. Ord v. Waller, 107 S. W., 1166; Johnson v. Johnson, 147 S. W., 1167; Morris v. Hesse, 210 S. W., 710; Davis v. George, 134 S. W., 326; 18 Corpus Juris, 254; Swan v. Mills, 219 S. W., 850; Arden v. Boone, 221 S. W., 265; Kansas City Packing Co. v. Spies, 109 S. W., 432; Beaver v. Casety, 175 S. W., 761; Summers v. Sheern, 37 S. W., 246; Morris v. Short, 151 S. W., 633; Wadsworth v. Vinyard, 131 S. W., 1171; McLennan v. Fisher, 130 S. W., 598; G. H. etc. Ry. Co. v. Pfeuffer, 56 Texas, 66; Caffey v. Caffey, 35 S. W., 738; I. & G. N. v. Dawson, 62 Texas, 261; Railway v. Jones, 82 Texas, 160.

These appellants are innocent purchasers for value without notice, and therefore could not be affected by the secret or undisclosed intention or agreement on the part of Kennedy. This question is directly passed upon in the case of Swan v. Mills, 219 S. W., 850, as well as other authorities heretofore cited, and we wish to cite the following cases as being in point: McEntire v. Marian Coal Company, 227 S. W., 298; Gray v. Producers Oil Company, 227 S. W., 240; McAlester v. Pritchard, 230 S. W., 66; Baker v. Baker, 230 S. W., 293.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This suit was filed in the District Court of Limestone County, by J. L. Gammon, John F. Wyatt, R. J. Colburn, M. B. Ray, and A. H. Paillett, against Humphreys-Mexia Company, a corporation, C. A. Kennedy, H. W. Freeman, W. D. Freeman, H. C. Freeman, J. E. Winans, J. W. McLendon, Jack Womack, Max Guteman, and The Shear Company, defendants, in the form of trespass to try title to part of the Pedro Varilla Eleven League Grant, situated about 1-½ miles west of the town of Mexia, in Limestone County.

In the trial court judgment was rendered in favor of the defendants named, except The Shear Company. On appeal, the Court of Civil Appeals reversed and rendered the judgment in favor of the defendants in error here, who were plaintiffs below. 244 S. W., 162. The case is here on writ of error.

Defendants in error owned the land in dispute, except the oil and minerals in the same. C. A. Kennedy was the common source of the title to the whole of the land, including the oil and minerals, and all parties claim under him.

On September 30, 1899, C. A. Kennedy executed and delivered a general warranty deed, in the usual form, to the land in controversy, to F. M. Sanches, the consideration being $1500, evidenced by five promissory vendor's lien notes, each for the sum of $300, payable as therein specified. The deed, after describing the land by field notes, and preceding the habendum and warranty clauses, contained an exception reading as follows:

"But it is expressly agreed and understood that said C. A. Kennedy reserves all the Oil and minerals in said land and he and his heirs assigns and legal representatives shall have the right at all times to enter on the above described lands and to bore wells and make excavations and to remove all the oil and minerals found thereon."

The deed also contained an express reservation of the vendor's lien to secure the payment of the purchase money notes.

At the time of the execution of this deed, Kennedy, who was, or had been, a merchant, was indebted to the Rotan Grocery Company, which was crowding him for settlement of his account. A short time after the execution of the deed, Kennedy carried the notes received by him therefor to Mr. Shear, the President of the Company, who accepted them and gave him credit on his account therefor. Kennedy states that Mr. Shear "knew full well the reservations in the deed, and he told me it was not worth one cent to me or anybody else." Some three or four months thereafter Kennedy, at the request of the Company, and without any additional consideration therefor, executed and delivered a transfer of the notes to the Company. This instrument reads as follows:

"The State of Texas  ⎱ Whereas heretofore, to-wit, on the 30 day
County of Limestone. ⎰

of Sept. A. D. 1 1899, F. M. Sanches, made, executed and delivered to C. A. Kenneday his five Several promissory notes payable to the order of said C. A. Kenneday as follows: Dated Sept. 30th, 1899, due Nov. 1st, respectively 1900, 1901, 1902, 1903, and 1904, for $300.00 each, bearing 10% interest per annum from January 1st, 1900, with interest on each of said notes at the rate of 10 per cent per annum and providing for the payment of 10 per cent additional as attorney's fees upon the Contingency therein specified. And whereas, said notes were given in payment of the purchase money for the following described parcel of land, situated in Limestone County, Texas, viz: being two tracts or parcels land out of the Pedro Varilla Eleven League grant this day sold to F. M. Sanches on Sept. 30, 1899.

"And whereas, a Vendor's lien is reserved and retained on said land to secure the payment of said notes and each thereof; Now, therefore Know all men by these presents, that I, the said C. A. Kennedy, for a valuable consideration, have assigned, transferred and delivered said 5 notes to The Rotan Grocery Co. and in consideration of the premises and the sum of One Dollar to me in hand paid, the receipt of which is hereby acknowledged, have bargained, sold and conveyed, assigned and set over to the said The Rotan Grocery Co. my lien on said land and have and do hereby bargain, sell and quit-claim all my right, title, interest, estate, claim and demand, both legal and equitable, in and to said land and every part thereof, together with all and singular the hereditaments and appurtenances thereunto appertaining. To have and to hold unto the said The Rotan Grocery Co. successors & assigns and his heirs and assigns forever.

"In testimony whereof, witness my hand at Mexia, this 29th day of Jan. A. D. 1900.

                                   C. A. Kennedy."

On February 24, 1903, Sanches and wife conveyed the land described in the deed to him from Kennedy to the Rotan Grocery Company, the consideration being the cancellation of the notes shown in the deed. This conveyance contained a recitation as follows:

"The land herein conveyed being the same land deeded to F. M. Sanches by C. A. Kennedy by deed recorded in Volume 36, page 547, Deed Records of Limestone County, Texas, and this conveyance is subject to the mineral rights reserved in said conveyance."

On March 30, 1905, the Rotan Grocery Company conveyed the land to Mrs. Jasper K. Smith, with the following in the deed:

"This land herein conveyed being the same land deeded to F. M. Sanchez by C. A. Kennedy by deed recorded in Vol. 36, page 547, deed records of Limestone County and afterwards conveyed to Rotan Grocery Company by said F. M. Sanches by deed dated February 24, 1903, recorded in deed records of Limestone County and is subject to the mineral rights reserved in said conveyance."

On September 4, 1908, the Rotan Grocery Company released the lien reserved in its deed to Mrs. Jasper K. Smith to secure the purchase money notes therein described, which release, among other things, recited:

"Said Rotan Grocery Company has no other or further claim against said land or any part thereof."

The word "minerals" is sufficiently broad to include "oil and minerals," the words used in the reservation in Kennedy's deed to Sanches, and for convenience will be used in this opinion as comprehending both oil and minerals.

The plaintiffs in error Humphreys-Mexia Co. et al., claim the minerals in the land in controversy under the exception in the deed above described·from Kennedy to Sanches.

The defendants in error claim by mesne conveyances solely under Mrs. Jasper K. Smith. The Shear Company, successor to the Rotan Grocery Company, claims that it took title to the minerals by reason of the transfer of the vendor's lien notes to it by Kennedy, set out above.

The Shear Company and the defendants in error both contend that the title to the minerals passed out of Kennedy by virtue of the transfer of the vendor's lien notes heretofore described, and that there·after when Sanches conveyed the land to the Company, the latter had title to not only the surface, but to the minerals as well. Defendants in error, Gammon et al., assert, however, that the deed and release of the purchase money notes to Mrs. Jasper K. Smith transferred the title to both the minerals and surface to her, and they claim the whole under her. The Shear Company denies this, and insists that the reference to the mineral reservation contained in the Rotan Grocery Company's deed to Mrs. Smith was sufficient to keep the title to the minerals in the Company, and that the release executed by it to her, described above, did not convey the title to the minerals. Plaintiffs in error, the Humphreys-Mexia Co. et al., assert that the title to the minerals never passed out of Kennedy by the assignment of the notes executed by the latter.

The contention of defendants in error and The Shear Company is that the transfer of the vendor's lien notes, in the light of a proper construction of the deed to Sanches, conveyed the minerals in the land, as well as transferred the vendor's lien notes, to the Rotan Grocery Company. In view of our conclusions, this is the only question necessary for us to discuss.

It is elementary that the minerals in place may be severed from the remainder of the land by appropriate conveyances. Stephens County v. Mid-Kansas Oil & Gas Co., by this Court, but not yet reported (113 Texas, 160, 254 S. W., 290); Texas Company v. Daugherty, 107 Texas, 226, 235, L. R. A. 1917 F, 989, 176 S. W., 714; State v. Downman, 134 S. W., 787, 795, (writ of error denied); Downman v. Texas, 231 U. S., 353, 58 L. Ed., 264; Washburn on Real Property

(5th ed.) Vol. 2, pp. 400, 401; Tiffany on Real Property, Vol. 1, §§ 252, 253.

The severance may be made by an exception or reservation in the deed. Lyler v. Dodge, 228 S. W., 316, 317; Luse v. Parmer, 221 S. W., 1031, 1032; Luse v. Boatman, 217 S. W., 1096; Wallace v. Hoyt, 225 S. W., 425; DeMoss v. Sample, 143 La., 243, 78 So., 482; Snoddy v. Bolen, 122 Mo., 429, 24 L. R. A., 507, 510, 25 S. W., 932; Tiffany on Real Property, Vol. 1, § 253, p. 876, Vol. 2, § 436, p. 1609; Thornton on Oil and Gas (3d ed.) Vol. 1, § 342, p. 496.

When the severance is accomplished, each estate, that in the minerals in place, and that in the remainder of the land, may be a free-hold, or an estate in fee simple. Washburn on Real Property (5th ed.) Vol. 2, pp. 400, 401; Tiffany on Real Property, Vol. 1, § 253, pp. 866, 871; Lillibridge v. Lackawanna Coal Co., 143 Pa., 293, 13 L. R. A., 627, and cases therein cited, 24 Am. St., 544, 22 Atl., 1035; Kincaid v. McGowan, 88 Ky. 91, 4 S. W., 802; Snoddy v. Bolen, 122 Mo., 479, 24 L. R. A., 507, 510, 511, 24 S. W., 142, 25 S. W., 932; see also Texas Company v. Daugherty, 107 Texas, 226, 235, L. R. A. 1917 F, 989, 176 S. W., 717; Houston Oil Co. v. Hamilton, 109 Texas, 270, 206 S. W., 817; and Lodwick Lumber Co. v. Taylor, 100 Texas, 270, 123 Am. St., 803, 98 S. W., 238.

We do not understand that these propositions are controverted, but the insistence is that the severance of the minerals in place from the remainder of the land can not be effected by a general warranty deed in which a vendor's lien is reserved to secure the payment of purchase money notes,—at least until the notes have been paid.

The language of the exception in Kennedy's deed is admittedly sufficient to sever the minerals from the land conveyed, unless this purpose is defeated by the reservation of the vendor's lien to secure the purchase money notes. Defendants in error's position is definitely stated in their third proposition, as follows:

"The deed from C. A. Kennedy to F. M. Sanches, dated September 30th, 1899, having expressly reserved a vendor's lien to secure the payment of the five purchase money notes, was an executory contract, and the superior title to the land remained in Kennedy until his conveyance became executed by the payment of the notes. The minerals having been reserved in the deed by apt language, the title thereto never passed from Kennedy by the deed, but at all times reposed in him, so that under the doctrine of merger the retention of the superior title to the land, which included the minerals, as well as the surface, precluded the technical severance attempted by the reservation. Therefore, the conveyance of the superior title and of his right, title, interest, estate, claim and demand, both legal and equitable, by the deed and transfer dated January 29th, 1900, divested him of any title to the minerals, and vested same in the Rotan Grocery Company." We will first inquire as to whether or not the deed from

Kennedy to Sanches was an executory contract in the sense that it was ineffective to sever the minerals in the land from the remainder.

The opinions of this Court have uniformly referred to deeds of the character here involved as executory contracts in which the legal title to the land conveyed remains in the vendor until the purchase money notes are paid. Counsel for The Shear Company cite Foster v. Powers, 64 Texas, 249; Farmers Loan Co. v. Beckley, 93 Texas, 267; Russell v. Kirkbride, 62 Texas, 455, in support of the doctrine. Many other cases might have been mentioned. But an examination of the opinions of this Court shows that, while the deed here involved is an executory contract as between the vendor and vendee, and those in privity with them, it is so only in the sense that the naked legal title remains in the vendor, to be automatically vested in the vendee upon payment of the purchase money; and that in all other respects, between such parties, and in all respects in so far as strangers to the transaction are concerned, the deed is not executory, but is an executed contract. Carey v. Starr, 93 Texas, 508, 515, 56 S. W., 324; Stitzle v. Evans, 74 Texas, 596, 12 S. W., 326; Ogburn v. Whitlow, 80 Texas, 239, 15 S. W., 807; Brown v. Montgomery, 89 Texas, 250, 253, 34 S. W., 443; Chase v. Swayne, 88 Texas, 218, 224, 53 Am. St., 742, 30 S. W. 1049; Texas Pacific Coal & Oil Co. v. Fox, 228 S. W., 1021, 1024; Rooney v. Porch, 239 S. W., 910; Dealey v. Lake, 62 Texas Civ. App., 429, 131 S. W., 441, 442; Frantz v. Masterson, 133 S. W., 740, 742; Blewitt v. Greene, 57 Texas Civ. App., 588, 122 S. W., 914, 916; Smith v. Jarvis, 24 S. W., 854, 855.

In the case of Carey v. Starr, 93 Texas, 508, 515, just cited, this Court said:

"From the time it was first announced that the reservation of lien in a deed reserved the superior title to the vendor, there has been a continuous and persistent effort to push it to the limit of executory contracts for the sale of land, but this court has steadily resisted that effort and has uniformly limited the vendor's title to the character of security for the purchase money debt, and, when the debt has been paid, the title of the vendor ceases. Ogburn v. Whitlow, 80 Texas, 241; Brown v. Montgomery, 89 Texas, 250. In Ogburn v. Whitlow, the vendee sought to defend against the purchase money notes on the ground that there was a defect in the title to the land and claimed that the deed was an executory contract; but this court said: 'While such deeds have been held by this court to be executory for some purposes, we think it should not be so held for all purposes, and that the one now in question should, upon the issue now presented, be treated as an executed contract.'

"When the purchase money has been paid, the title of the vendee in a deed of the character in question becomes absolute as to the vendor without any action on his part. It is not executory in any sense, except that the title awaits the payment of the purchase money

for the land. Stitzle v. Evans, 74 Texas, 596; Russell & Seisfeld v. Kirkbride, 62 Texas, 455.''

This excerpt announces the correct doctrine, from which, as we understand them, there is no dissent in the opinions of this Court.

The rule is elementary that ''a contract may be partly executed and partly executory; and may be executory as to one party and executed as to another.'' 13 Corpus Juris, pp. 245, 246, and cases cited in the notes. It is this rule which has been applied by this Court in dealing with deeds in which vendor's liens have been retained to secure purchase money. Such a deed or contract is executory in the sense that upon default in the payment of the purchase money, the vendor may rescind the trade and sue for the land; but it is an executed contract for all other purposes.

The deed from Kennedy to Sanches not only conveyed the right of possession, use and profits in the land, but transferred to the latter the equitable title, giving him a title and right of occupancy sufficient to enable him to bring or defend suits in trespass to try title against all the world, except the grantor or those in privity with him. As to all persons except the grantor holding the purchase money notes, or another to whom he had transferred both the notes and the so-called superior title, such a conveyance was absolute, and vested title. Pomeroy's Equity-Jurisprudence (3d ed.) Vol. 1, § 368, p. 611, (4th ed.) Vol. 3, § 1261; Tiffany on Real Property, Vol. 1, § 125, p. 457, § 214, p. 750; Stephens v. Motl, 81 Texas, 115, 121, 16 S. W., 731; Mason v. Bender, 97 S. W., 715, 718; Whitehead v. Fisher, 64 Texas, 638, 642-3; White v. Cole, 9 Texas Civ. App., 277, 29 S. W., 1148, 1151; Carey v. Starr, 93 Texas, 508, 56 S. W., 324; Robinson v. Kampmann, 5 Texas Civ. App., 605, 24 S. W., 529; State v. Dayton Lumber Co., 106 Texas, 41, 45, 155 S. W., 1178; Minter v. Burnett, 90 Texas, 245, 38 S. W., 350; Daugherty v. Manning, 221 S. W., 983, 986, 987; G. C. & S. F. Ry. Co. v. Blount, 136 S. W., 566, 568.

The vendee under a deed retaining a vendor's lien to secure the purchase money is the ''*owner*'' under our statutes authorizing the making of contracts, fixing mechanic's, materialmen's, and other liens. Security Mortgage and Trust Co. v. Caruthers, 11 Texas Civ. App., 430, 32 S. W., 837, 841. Such a vendee not only acquires the right to possession, rents and profits, but the right to encumber, sell, and transfer the property, subject only to the payment of the purchase money and to damages for injuries to his land. Gilbough v. Runge, 99 Texas, 539, 122 Am. St., 659, 91 S. W., 566; Tom v. Wollhoefer, 61 Texas, 277; Denison & P. S. Ry. Co. v. O'Maley, 18 Texas Civ. App. 200, 45 S. W., 225. The vendee in such a deed is the entire, sole, and unconditional ''owner'' of the property within the meaning of these terms as used in a fire insurance policy. Liverpool, etc. Ins. Co. v. Ricker, 10 Texas Civ. App., 264, 31 S. W., 248; Hamburg-Bremen Ins. Co. v. Ruddell, 37 Texas Civ. App., 30, 82 S. W.,

827; Wright v. Hartford Fire Ins. Co., 54 Texas Civ. App., 6, 118 S. W., 192. The land of such a vendee is subject to execution and the laws of descent and distribution. Minter v. Burnett, 90 Texas, 245, 249, 38 S. W., 350.

On the other hand, the bare legal title held by the vendor after the transfer of the purchase money notes is an insufficient defense against a suit in ejectment brought by the purchaser. Roy v. Clarke, 75 Texas, 28, 12 S. W., 845. Nor could the holder of such a title maintain a suit for the land. Raley v. D. Sullivan & Co., 207 S. W., 906. The title of the vendor under such conditions is not subject to attachment or execution. Ross v. Bailey, 143 S. W., 961, 963; Traders National Bank v. Price, 228 S. W., 160; Rutherford v. Mothershed, 92 S. W., 1021; Willis v. Sommerville, 3 Texas Civ. App., 509, 22 S. W., 782. And although the naked legal title of the vendor, who has disposed of the purchase money notes, on his death may pass to his heirs, they take no beneficial interest therein, but receive and hold it in trust for the holder of the notes. Atteberry v. Burnett, 102 Texas, 118, 122, 113 S. W., 526.

The contract is so completely an executed one that the courts hold that the vendor, although holding, as between himself and his vendee, the superior title, can not maintain a suit in trespass to try title against one claiming adversely to his vendee. State v. Dayton Lumber Co., 106 Texas, 41, 155 S. W., 1178; Stephens v. Motl, 82 Texas, 81, 18 S. W., 99. His right, at most, as to others than his vendee, is that of a mortgagee out of possession. Carey v. Starr, 93 Texas, 508, 56 S. W., 324; Stephens v. Motl, 82 Texas, 81, 18 S. W., 99.

A consideration of the cases cited shows conclusively that the deed from Kennedy to Sanches was an executed contract for all purposes, except to defeat the payment of the purchase money notes. For that purpose it was executory, in so far as the right of rescission existed in favor of Kennedy. But in so far as Kennedy's action was concerned, the contract was completely executed. Nothing remained for him to do. He had signed, acknowledged, and delivered the only conveyance which the law or the contract required of him, or made necessary for him to execute. Upon the payment of the purchase money, the legal title to the land held by Kennedy would, ipso facto, vest in Sanches. Burnett v. Atterberry, 105 Texas, 119, 125, 145 S. W., 582; Russell v. Kirkbride, 62 Texas, 455.

Since the contract, in so far as any act on the part of the vendor was concerned, was complete, it follows that every constituent element thereof, every act devolving upon him to perform, including the severance of the minerals in place from the remainder of the land, had been performed and was fully executed.

Shortly after the execution of the deed to Sanches, Kennedy endorsed and delivered the purchase money notes to the Rotan Grocery

Company. This gave that Company the right to sue on the notes, foreclose the vendor's lien reserved to secure the same, but did not transfer the legal title, also held by Kennedy, to secure the payment thereof. Hamblen v. Folts, 70 Texas, 132, 135; 17 Michie's Digest of Texas Repts., pp. 255, 258.

However, thereafter Kennedy had no beneficial interest in the legal title to the land conveyed to Sanches, and held it in trust as a naked trustee for the benefit of the holder of the notes and for the vendee. Ross v. Bailey, 143 S. W., 961, 962; Hamblen v. Folts, 70 Texas, 132, 7 S. W., 834; Russell v. Kirkbride, 62 Texas, 455; Brotherton v. Anderson, 27 Texas Civ. App., 587, 66 S. W., 682.

But the insistence is made that under the principles of merger the deed to Sanches was inoperative to separate the minerals in place from the residue of the soil, and since the transfer from Kennedy to Rotan Grocery Company conveyed the legal title to the land sold to Sanches, it also carried the legal title to the minerals as well,— that is, the one could not be conveyed without at the same time transferring the other. In effect, the proposition is that the doctrine of merger of estates under a deed retaining a vendor's lien prevents the severance of the minerals in place from the remainder of the land.

The doctrine of merger can have no application to the state of facts before us. This doctrine applies to *estates* in land into which the original estate in fee simple may have been divided, as an estate for years or for life, and not to the different divisions of a tract of land, whether these divisions are horizontal or vertical. It is only when these less estates meet in one and the same person that the doctrine of merger applies, and the lesser estates are merged in a larger, or in the estate in fee simple. Tiffany on Real Property, Vol. 1, §§ 17 to 34, inclusive.

The authorities cited by defendants in error, Gammon and others, to-wit: Smith v. Cooley, 164 S. W., 1050, Watts v. Bruce, 31 Texas Civ. App., 347, 72 S. W., 258, Ackerman v. Smiley, 37 Texas, 211, Thornton on Oil and Gas, § 69, and other authorities, support the doctrine just announced. They have no application to the transaction here before us, where the minerals in place were severed by the conveyance from the residue of the soil, and the original land as effectively divided into two tracts as if the division had been made by superficial lines, or had been severed vertically by horizontal planes.

There can be but one estate in fee simple to a particular described tract of land, (Washburn on Real Property, Vol. 1, 5th ed., p. 83), and therefore there can never be a merger of two estates in fee simple to the same land. Only estates subordinate to the fee in duration or privilege may merge with it or with each other. 21 Corpus Juris, § 235, pp. 1035, 1036. But in the case before us, Kennedy's deed effectively severed the minerals in place from the remainder of the

land; and each division of the land, the mineral division retained by Kennedy, and the remainder conveyed to Sanches, thereafter was held in fee, each carrying with it full power of occupancy, control, unlimited duration, right of alienation, inheritance, and every other attribute of an estate in fee simple, except the title of Sanches was not indefeasible until the purchase money notes were paid.

If a third party had owned the land here involved, selling the minerals in place to Kennedy and the remainder of the soil to Sanches, and after having transferred the vendor's lien notes to the Rotan Grocery Company had then conveyed the legal title reserved to secure the notes to Kennedy, then we would have a state of facts much more favorable to illustrating the doctrine of merger than the actual facts in the case,—and yet the doctrine of merger would not apply. The retained legal title subsequently conveyed could not merge in the title to the minerals in place, nor the latter in the former. According to the common law, by which we must be guided, in order that a merger may occur, it is ordinarily necessary that one person hold the two estates in the same right; and, consequently, if he holds one in behalf of himself, and the other for another, then there can be no merger. Tiffany on Real Property, Vol. 1, § 34, p. 93; 21 Corpus Juris, § 235, p. 1036, and cases cited in the notes. In the instance suggested, Kennedy would hold the minerals in his own right, but the legal title subsequently conveyed to him would not be in his own right, but as trustee for the vendee, and for the owner of the notes. His legal title would be merely a naked legal title, in which he had no interest, held in trust for others. It is manifest, under the authorities, that his title as trustee would not merge with his title in fee to the minerals.

It is likewise elementary that in order for estates to merge, there must not be an intermediate estate. Tiffany on Real Property, Vol. 1, § 34, p. 89; Kent's Commentaries (13th ed.), Vol. 4, p. 107 (102); 21 Corpus Juris, § 235, p. 1036; Smith v. Cooley, 164 S. W., 1050, 1052.

In the case suggested the estate of Sanches would intervene between the so-called legal title to the land conveyed to and the fee simple title held by Kennedy to the minerals. Hence the doctrine of merger could not apply. The two estates, if the division accomplished by the deed should be regarded as a separation of the original fee,— that is, the mineral estate and the estate to the residue of the soil, could not merge and become one without the annihilation of the equitable title and possession of Sanches, and that could not be annihilated except upon default in the payment of the purchase money notes. It is, therefore, clear that there could not be a merger of the estates.

Under the doctrine of merger the less estate disappears. In the instance before us, the estate to the minerals is a fee simple estate, and, therefore, if the legal title merged with it, the latter would disappear. But in the case suggested the legal title could not disappear, because both the vendee and the owner of the notes are interested, are the actual beneficial parties to the legal title, and their rights could no more be destroyed by merger than in any other way contrary to the contract.

Since it is clear that the legal title retained to secure the payment of the notes could not merge with the fee simple title to the minerals held by Kennedy, on facts analogous to those under which the doctrine of merger applies, it is conclusive that the doctrine of merger does not militate against the creation of the two divisions of the land, the minerals in place and the remainder of the land, by Kennedy's deed to Sanches.

Aside from this, the rule is a familiar one that the doctrine of merger does not apply in any case where it is the intention of the parties that it should not apply. Kent's Commentaries (13th ed.), Vol. 4, p. 107 (102); Tiffany on Real Property, Vol. 1, § 34, p. 92; Cole v. Grigsby, 35 S. W., 680, 690; Hapgood Shoe Co. v. First Nat. Bank, 23 Texas Civ. App., 506, 56 S. W., 995; Ferguson v. Ragland, 243 S. W., 721, 724.

By analogy, as well as under the general rules of construction, we may say that where it is the intention of the parties to a conveyance of land to separate the title in fee to the minerals in place from the title in fee to the remainder of the land, effect will be given to this intention. See Miley v. Deer, 93 S. C., 66, 76 S. E. 28; Washburn's Law of Real Property (5th ed.), Vol. 2, § 262, p. 638; 21 Corpus Juris, p. 1007; Michie's Digest of Texas Repts., Vol. 6, pp. 215 to 218.

This was Kennedy's status when called upon to execute the assignment of the vendor's lien notes in evidence: He was the holder of the fee simple title to the minerals in place, severed from the remainder of the land, and to the latter he held the naked legal title as trustee, without any beneficial interest whatever. An examination of the assignment of the vendor's lien notes, quoted above, leaves no doubt as to which of the titles or estates he conveyed to the Rotan Grocery Company. This assignment has been quoted. As a matter of inducement, explanatory of the occasion and purpose of the instrument, it refers to the execution of the vendor's lien notes heretofore described, secured by the lien on "*two tracts or parcels of land out of the Pedro Varilla Eleven League Grant this day sold to F. M. Sanches on Sept. 30, 1899,*" which, as we have seen, did not embrace the minerals in place. The instrument then states:

"And whereas a vendor's lien is reserved and retained on *said land* to secure the payment of said notes and each thereof; Now, therefore Know all men by these presents, that I, the said C. A. Kennedy, for

a valuable consideration, have assigned, transferred and delivered said 5 notes to The Rotan Grocery Co. and in consideration of the premises and the sum of One Dollar to me in hand paid, the receipt of which is hereby acknowledged, have bargained, sold and conveyed, assigned and set over to the said The Rotan Grocery Co. my lien on *said land* and have and do hereby bargain, sell and quitclaim all my right, title, interest, estate, claim and demand, both legal and equitable, in and to said land,'' etc.   (All italics ours).

The word *"said"* is often used in deeds and other instruments to refer to some antecedent provision, person, or object.   Words and Phrases, Vol. 7, p. 628; same, Second Series, Vol. 4, p. 430; Moss v. State, 47 Texas Cr. R. 459, 11 Ann. Cases, 710, 83 S. W., 830; Cubine v. State, 44 Texas Cr. R., 596, 73 S. W., 396, 397.

In the transfer of the vendor's lien notes before us the words *"said land"* in each instance necessarily refer to the land previously designated as that conveyed by Kennedy to Sanches on September 30, 1899. This reference is plainly to the deed from Kennedy to Sanches by which the notes were created and the lien retained, and the assignment must be construed in connection with that deed.   5 Corpus Juris, pp. 943, 944; Sanborn v. Crowdus Bros & Co., 100 Texas, 605, 102 S. W., 719; Brown v. Chambers, 63 Texas, 131, 135; Clopper v. Sage, 14 Texas Civ. App., 296, 37 S. W., 363; Combs v. Virginia Iron, Coal & Coke Co., 197 Ky., 476, 245 S. W., 836; Devlin on Real Estate, Vol. 2, § 1020.   Therefore, the general words in the assignment describing the land are necessarily limited to the land conveyed to Sanches, which did not embrace the minerals in place.

The only ''right, title, interest, estate, claim and demand, both legal and equitable, in and to said land and every part thereof,'' which Kennedy had in *"said land"* at the time he executed the assignment of the vendor's lien notes, was the naked legal title held in trust to secure the payment of the notes previously transferred to the Rotan Grocery Company, and this was the only title conveyed by the instrument.

A further discussion of the question is unnecessary. It is clear to us that the assignment of the vendor's lien notes, executed by Kennedy, when construed in connection with the deed, conveyed to the Rotan Grocery Company only the notes, the lien reserved to secure them, and the naked legal title retained by Kennedy for the same purpose; and did not convey the minerals in place excepted in the Sanches deed, and held by Kennedy in fee.   This is the common sense construction, and in our opinion produces the result contemplated by, and effectuates the intention of, the parties to the instrument.

Having reached this conclusion, it is unnecessary to consider other assignments or propositions urged either by the defendants in error, Gammon and others, or by The Shear Company.

The errors of the trial court, if any were made, become immaterial, in view of the fact that a correct judgment was rendered by that court for the plaintiffs in error.

From the foregoing it follows that the judgment of the Court of Civil Appeals must be reversed in so far as it changed or modified the decree of the trial court, and judgment here rendered in all things affirming the judgment of the District Court; and it is so ordered.

*Reversed and judgment of District Court affirmed.*