No. 16,384.

Estate of Sullivan.
Garvin *v.* Ruston, Inheritance Tax Commissioner.
(218 P. [2d] 1064)

Decided May 1, 1950.

Messrs. Dines, Dines & Holme, Mr. Robert E. More, Mr. Peter H. Holme, Jr., for plaintiff in error.

Mr. John W. Metzger, Attorney General, Mr. Allen Moore, Deputy, Mr. Harry H. Ruston, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Jackson delivered the opinion of the court.

Plaintiff in error, Garvin, who also was plaintiff in the trial court, filed his petition in the county court seeking a reduction of the Colorado inheritance tax on the estate of Thomas A. Sullivan. His petition being dismissed, he appealed to the district court, which likewise ruled in favor of the Inheritance Tax Commissioner. Garvin is now here seeking a reversal of the judgment on an agreed statement of facts, of which the following appear to be pertinent.

Sullivan, a Colorado resident, was an uncle of Garvin, a resident of New York. In September 1944 they entered into a partnership agreement "in the purchase, operation and lease or sale of a farm and cattle ranch now known as the Rhodes Ranch, in the state of Colorado."

The copartnership was " * * * to commence as of the date of the purchase of said ranch and will continue thereafter until the expiration of sixty days written notice of termination of the copartnership given by either of the said parties to the other at their last known addresses, or the earlier death of either of the partners.

"In the event that such notice is given, the party to whom such notice is given shall have the right, at any time before the expiration of such sixty days, to elect to buy out the interest of the partner sending such notice at a price to be fixed by two appraisers, one appointed by each of the said parties. Should such two appraisers not agree, a third appraiser will be selected by the two appraisers appointed by the respective partners, and the final decision of either the original two appraisers should they agree, or a majority of the three appraisers should three be named, shall be binding in all respects upon both of the partners. * * * The valua-

tion of the interest of any partner to be bought out hereunder shall be paid to the other party in cash within thirty (30) days after the value of the interest of such partner has been fixed and notice thereof sent to the respective parties.

"Each of the partners agrees to contribute to the capital of the partnership in cash a sum not to exceed Twenty-five Thousand Dollars ($25,000) for the purchase of the said property, etc., plus an additional amount equal to one-half of the cost to the partnership of all such cattle now on the said property as the partners may mutually agree to purchase. * * *

"Each of the partners shall also have the right, upon thirty days' written notice to the other towards the end of any calendar year to require a distribution of profits or accumulated capital in such amount as he may desire, provided, however, that the total amount of such distributions shall not make the partnership insolvent, or leave it without sufficient working capital to continue the operation of its farming or ranching business in the same manner as theretofore.

"Upon any termination of the partnership, the assets of the partnership shall be distributed equally between the partners except that the party of the first part hereby agrees that should the partnership be terminated by his death, any and all interest that he might have had in and to any and all of the capital assets and accrued income of the partnership before his death shall upon his death become the sole, complete and absolute property of the party of the second part. Should the partnership be terminated by the death of the party of the second part, any and all interest that he might have had in and to any and all of the capital assets and accrued income of the partnership before his death shall, upon his death, become the property of his estate and pass under the terms on his Last Will and Testament."

Thereafter the Rhodes Ranch was conveyed to Garvin

and Sullivan as joint tenants, without making any reference to the partnership agreement.

Sullivan died testate April 18, 1946, and the commissioner taxed his interest in the ranch property (including cattle, etc.,) on a valuation of $32,462.50 which represented fifty per cent of the total value of the ranch and cattle. The executor paid the tax computed on this basis. By his petition, Garvin sought to have this valuation reduced one-half, it being his contention, as set forth in the agreed statement of facts: " * * * that under said partnership agreement of September 1944 an undivided one-half of the ranch was owned outright by Garvin and his heirs, and an undivided one-half in joint tenancy, and that the tax thereon should have been upon a value of $16,231.25 instead of the $32,462.50 assessed by Commissioner."

Counsel for Garvin, in their brief, after quoting from the provisions in the partnership agreement which provided that Garvin's interest upon his death should become a part of the assets of his estate, restate their position in the following words: "It is thus apparent that the ownership of the ranch was to be treated in the following manner: An undivided one-half was Garvin's property in fee, and regardless of his prior death, would, like any other property which he owned in fee, become a part of his estate. The other half would go to Garvin or Sullivan, depending upon which survived. As has been pointed out above, survivorship is the characteristic which distinguishes a joint tenancy from other types of common ownership. Thus, only the half which Garvin did *not* own in fee was held in joint tenancy, because *only to that half did survivorship apply.*"

One fallacy in this argument lies in the attempt to dissect the separate interests of those who hold property in *an undivided* interest in common with someone else.

Counsel, without support for their statement, say that Garvin had a fee title to an undivided one-half interest in the partnership property, and then assume a

joint tenancy in the remaining one-half interest by using the words: "The other half would go to Garvin or Sullivan depending upon which survived;" whereas, with more reason, it can be said that Sullivan had a present interest in his half interest which was subject to divestment in favor of Garvin upon Sullivan's death, but only if Garvin was alive at the time of that event.

Actually, it can not be said that either Garvin or Sullivan had a fee title to their respective one-half interests in the partnership property. The partnership was terminable while both were living; each was bound, while both were alive, not to sell his one-half interest without giving his partner the option to purchase it at a price fixed by an appraisal made by third persons. This special limitation alone kept the ownership of either from being in fee. Moreover, the very fact of holding the title jointly or in common with someone else prevents a holding in fee. *Magnolia Petroleum Co. v. Thompson,* 106 F. (2d) 217, 224, is cited among numerous cases in 31 C.J.S., page 19, section 8, under the heading "Estates," in support of the statement that: "An estate in fee simple is the greatest estate and most extensive interest which a person can possess in landed property, * * *." *In re McBride's Estate,* 253 Mich. 305, 235 N.W. 166, and *Humphreys-Mexia Co. v. Gammon,* 113 Tex. 247, 254 S.W. 296, 29 A.L.R. 607, are cited to support the later statement in 31 C.J.S., page 20: "And there can be but one estate in fee simple to a particular described tract of land." This court adopted a somewhat similar definition of a fee title in *City of Leadville v. St. Louis S. & R. Co.,* 29 Colo. 40, 67 Pac. 1126.

In the instant case there are two documents to consider:

(1) Under the partnership agreement, if Garvin dies first his one-half interest is listed as part of the assets of his estate and Sullivan's one-half interest remains Sullivan's property. Garvin's one-half interest is subject to an inheritance tax. If Sullivan dies first his one-half

interest goes to Garvin, and it would seem should be taxed to Garvin by the Inheritance Tax Commissioner.

· What Garvin proposes is that, if Sullivan dies first, the Sullivan half interest going to Garvin shall be taxed on a valuation of a quarter interest. On this basis a one-quarter interest escapes taxation, when Sullivan dies first, because after Sullivan's death Garvin will have succeeded to Sullivan's complete interest but will have paid a tax on only one-half of that interest.

(2) Under the joint tenancy deed, Sullivan succeeds to Garvin's one-half interest if Garvin dies first, and Garvin succeeds to Sullivan's one-half interest if Sullivan dies first. In either event the survivor is taxed under section 8, chapter 85, '35 C.S.A., on the half interest of his partner. This section was amended by S.L. '47, page 537, approximately one year after Sullivan's death. The main purpose of the amendment was to deal with the taxation of jointly held bank accounts and government securities.

If this is not a joint tenancy taxable under section 8, supra, then section 7 (d), chapter 85, '35 C.S.A., would apply, and Sullivan's one-half interest going to Garvin would be taxed under that section. Counsel for Garvin say this is not proper; that the tax law applicable here is section 8, supra, dealing solely with joint tenancies. The joint tenancy they wish to have taxed is not the joint tenancy by which Sullivan and Garvin took title to *all* the property, but a fictitious joint tenancy in one-half of the property which was not mentioned in the partnership agreement and is contrary to the actual deed creating a joint tenancy in all of the property.

The only joint tenancy that appears in the record of this case was that which was created by the deed by which Sullivan and Garvin took title to *all* of the partnership property. That deed, by the agreed statement, appears to have been regular in form and to have conformed with the Colorado statute providing for the creation of joint tenancies. Our statute, section 4, chap-

ter 40, '35 C.S.A., as amended by S.L. 1939, page 285, raises a presumption against the creation of joint tenancies—as do statutes in "virtually every state." *Stambaugh v. Stambaugh*, 288 Ky. 491, 156 S.W. (2d) 827. It is explicit in the manner·in which such a tenancy is created. If the parties had intended a joint tenancy to apply only to one-half of the partnership property, or to a particular one-half interest in it, they could and— because of the statute — should have specifically so stated. We therefore find no justification for holding that a joint tenancy was created affecting only Sullivan's interest in the property, even if it could be fairly inferred that there was an intention to create one—an inference which in this case does not appear to be tenable.

We are asked to consider the partnership agreement along with our consideration of the deed in joint tenancy, to the end that the two documents should be construed together. In doing so it would appear that had Garvin predeceased Sullivan the question would then be whether the latter, being the survivor under the joint tenancy deed, should not stand seized of Garvin's one-half interest for the benefit of Garvin's heirs or the proper beneficiaries under his will, in which case it should be noted that Garvin's one-half interest would be taxed as part of the assets in his estate. But we are not concerned with that question under the circumstances in the instant case. Sullivan, having predeceased Garvin, the latter succeeds to Sullivan's one-half interest by the terms of both the partnership agreement and the deed in joint tenancy. The two documents are harmonious, as applied to the facts in this case. The Inheritance Tax Commissioner is justified in taxing this half-interest, whether it passes to Garvin as survivor under the joint tenancy deed or as the partner entitled to take under the partnership agreement.

We are of the opinion that the executor of the Sullivan estate was correct in paying the tax as assessed by

the Inheritance Tax Commissioner on the foregoing basis; that the county court was correct in dismissing Garvin's petition; and that the district court properly affirmed this dismissal.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE HOLLAND dissent.