**CAULK v. MILLER et al. (No. 9293.)**

Court of Civil Appeals of Texas. Galveston. May 8, 1929.

H. H. Cooper, of Amarillo, for appellant.
Follett & Evans and Louis J. Wilson, all of Angleton, for appellee Marmion.

LANE, J. There is no statement of facts filed in this court; we shall therefore accept as true the uncontested fact findings found and filed by the trial judge in the disposition of this case. The fact findings by the trial judge are substantially as follows:

On the 7th day of February, 1918, J. R. Marmion and E. A. Giraud, the then joint owners of the several tracts of land involved in this suit, executed and delivered to W. P. Hamblen, as trustee for the use and benefit of P. G. Foley, a deed of trust covering said lands to secure the payment of their certain promissory note held and owned by Foley. Such deed of trust was duly recorded as required by law.

On the 26th day of February, 1919, J. R. Marmion and E. A. Giraud, by their deed of that date, conveyed the lands involved in this suit to J. P. Bell for the considerations received and to be received by them, upon the terms and conditions and for the purposes stated in a conveyance, as follows:

"State of Texas, County of Harris.

"Know all men by these presents: That we, E. A. Giraud, of Travis County, Texas, and J. R. Marmion, of Harris County, Texas, for and in consideration of Thirty-two thousand, eight hundred and thirty-three and 75/100 ($32,-833.75) dollars to us in hand paid and to be paid as hereinafter stated, by J. P. Bell of Dallas County, Texas, and the further consideration hereinafter set forth, have grant-ed, sold and conveyed, and by these presents do grant, sell and convey unto the said J. P. Bell all those certain tracts of land situated in the County of Brazoria, in the State of Texas, described as follows: (Description omitted.)

"Saving and excepting certain rights as to minerals upon and under said land and reversionary rights in connection therewith, as hereinafter set forth.

"To have and to hold the premises above described together with all and singular the rights and appurtenances thereto in anywise belonging unto the said J. P. Bell, his heirs and assigns forever. And we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said J. P. Bell, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to taxes for the year 1919, which are to be assessed and paid by the grantee.

"Of the consideration hereinbefore stated, twelve thousand, eight hundred and thirty-three and 75/100 ($12,833.75) dollars has been paid in cash, the receipt of which is hereby acknowledged, twelve thousand ($12,000.00) dollars is to be paid according to the terms of two promissory notes of even date herewith, signed by the said J. P. Bell and payable to our order, viz: one note for four thousand ($4,000.00) dollars payable on or before one year after date, and one note for eight thousand ($8,000.00) dollars, payable on or before two years after date. The said notes bearing interest from date at the rate of eight per cent. per annum, payable annually, and providing for ten per cent. attorney's fees, in case of collection by legal process. The remaining eight thousand ($8,000.00) dollars is to be paid according to the terms of a certain promissory note for said sum, dated February 8, 1918, signed by the grantors herein and payable to P. C. Foley, or order, at Houston, Texas, four years after date and bearing interest at the rate of seven per cent. per annum from date, payable semi-annually, secured by deed of trust of same date, recorded in Vol. 29, page 120, of the Mortgage Records of Brazoria County, which note and the interest thereon from this date the said J. P. Bell assumes and promises to pay.

"It is expressly agreed that default in the payment of either of said two notes first above described, or any installment of interest thereon when due, or failure of the grantee to pay the interest upon said assumed notes when due shall, at the option of the holder, cause the said two notes first described to become due.

"The vendor's lien is expressly retained upon the property hereby conveyed, to secure the payment of the balance of purchase money as above stipulated.

"The grantors reserve to themselves and do not convey one-eighth of the oil and other minerals and the royalties hereinafter specified for sulphur and gas upon and under the said land, as a part of the consideration for this conveyance, it is expressly agreed:

"(1) That the grantee will, within six months from this date, begin the actual drilling for oil upon the said land and prosecute the same to the production of merchantable oil or other minerals to a depth of not less than three thousand, two hundred (3,200) feet. A greater depth being permissible at the option of the grantee.

"(2) Within thirty days from the completion of the first well to production or to a depth of thirty-two hundred feet, the grantee herein shall begin actual drilling on a second well to the completion of the second well to production or to a depth of thirty-two hundred feet, he shall begin actual drilling on a third well and so on until five wells shall have been completed to production or to a depth of not less than thirty-two hundred feet, logs of said wells to be furnished grantors as soon as wells are completed. If the grantee shall fail to commence actual drilling operations within six months herefrom or shall fail to continue drilling operations as herein set forth, or shall fail to furnish five wells to merchantable production or to a depth of thirty-two hundred feet within three years he shall in either event forfeit all rights to all the minerals on or under said land and the grantee, his heirs or assigns, shall reconvey to the grantors, their heirs or assigns, all interest in said minerals at his expense. If the purchaser shall comply with this agreement and develop oil or other minerals, he shall continuously prosecute the development of said minerals so long as they can be produced in commercial quantities and deliver to the grantors, their heirs or assigns, one-eighth ($\frac{1}{8}$) of all minerals produced, delivering oil in pipe lines and other minerals not especially designated herein, in storage on surface, free of any expense to the grantors. The said grantors are further to receive two hundred ($200.00) dollars per annum for each gas well from which gas is sold off the premises, fifty ($50.00) dollars per annum for each casing head gas well, and one dollar per ton for each ton of sulphur sold off the premises in full satisfaction of the grantors' rights in said gas and sulphur."

J. P. Bell paid the cash consideration called for by the deed and also executed and delivered to his vendors the two notes called for in the deed, one for $4,000 and the other for $8,000.

Neither J. P. Bell, nor any one claiming under him, began the drilling for oil upon the land as provided in the deed from Marmion and Giraud to him, nor did he, nor any one claiming under him, in any respect ever comply with and perform any of the conditions stipulated in the deed relative to the drilling for the production of oil and other minerals on the land.

On February 20, 1920, J. P. Bell conveyed to H. F. Caulk the land involved in this suit, for a recited consideration of $13,393.75, and the assumption by Caulk of the payment of all legal indebtedness existing against the land and taxes due thereon for the year 1920.

On the 20th day of January, 1921, J. R. Marmion and E. A. Giraud entered into a written agreement with one H. H. Helm, wherein it is recited that Marmion and Giraud had, by their deed of date February 26, 1919, conveyed the land involved to J. P. Bell; that by such deed Marmion and Giraud had reserved one-eighth of the oil and other minerals on, in, and under the land described therein, and that it was stipulated in such deed that Bell had agreed and obligated himself to drill five wells for oil upon the land within the time and under the terms and conditions stated in the deed; that Bell had failed to comply with the terms and conditions stipulated in the deed relative to drilling for oil and other minerals; that Helm agrees to acquire all the rights, title, interest, and claim of J. P. Bell and those under him in and to the land and to fulfill and carry out the conditions stipulated in the deed from Marmion and Giraud to Bell, and to pay all unpaid consideration stipulated therein; that Helm agrees to acquire all the right, title, claim, and interest of Bell and those claiming under him in and to the land and the minerals on, in, or under the same, within 90 days from the date of the instrument, and to remove all liens, charges, and incumbrances placed upon the land by Bell and those claiming under him; that he agrees to begin the actual drilling for oil upon the land on or before the 1st day of March, 1921, and to drill the same to a depth of 3,500 feet, unless oil in paying quantities shall be reached at a less depth, and agrees to drill other wells, etc.; and that upon a failure to so drill for oil his rights by virtue of the instrument should cease, but if he should comply with the conditions and stipulations therein he shall be entitled to seven-eighths of the minerals produced from, or lying on, in, or under the land; that Helm agrees to execute a deed to Marmion and Giraud conveying to them one-eighth of the oil and other minerals on, in, or under the land and deposit it in escrow, and in the event he shall fail to comply with the conditions and stipulations in the instrument (from which these recitals are taken), such deed shall be delivered to Marmion and Giraud, and thereafter all the minerals in, under, and upon the land become the property of Marmion and Giraud.

It is also recited in the instrument that Marmion and Giraud are the owners of one-eighth of all oil and minerals on, in, and under the land which they have reserved and not conveyed by their deed to J. P. Bell.

(There are other stipulations in the instrument which we think in no way affect the questions here involved, and they are therefore not mentioned.)

In making the agreement mentioned, Helm was acting for I. M. Putnam and the Wichita Petroleum Company.

Putnam and his associates drilled one well to the depth of 3,500 feet in accordance with the written agreement entered into between Marmion and Giraud and Helm, and thereafter Putnam organized a syndicate to which Marmion and Giraud were parties, and this syndicate deepened the well above mentioned to a depth of 4,500 feet. No minerals were produced by the efforts of such syndicate, and as Helm and those claiming under him failed to perform the conditions and stipulations set out in his contract, they failed to perfect their title to the land.

Marmion and Giraud never at any time waived the performance by Bell or those holding under him of any of the terms, conditions, and stipulations set out in their deed to Bell.

On the 4th day of March, 1921, H. F. Caulk, the plaintiff here, who purchased from Bell, conveyed the land involved in this suit to J. A. Miller, and as part of the consideration Miller assumed the payment of two notes for the sum of $8,000 each, one of which was the note executed and delivered by Marmion and Giraud to P. C. Foley, which was secured by the vendor's lien, and by a deed of trust executed for the benefit of P. C. Foley, and the other was the $8,000 note executed by Bell to Marmion and Giraud in part payment for the land; such conveyance being also subject to the rights of Marmion and Giraud in the oil, gas, and minerals in, on, and under the land. As a further consideration for such conveyance, Miller executed and delivered to H. F. Caulk, his grantor, eleven notes for $500 each, secured by the vendor's lien and a deed of trust on the land.

Pending the negotiations between Caulk and Miller, and after the deed from Caulk to Miller was executed by Caulk, such deed was placed in escrow, and before it was delivered to Miller, Caulk paid Marmion and Giraud $5,640 on the $8,000 note executed by Bell to them, the payment of which Caulk had assumed in his purchase of the land from Bell.

Miller was never paid any part of the note last mentioned, nor any part of the amount due on the eleven $500 notes executed by him to Caulk.

On March 26, 1921, J. A. Miller conveyed to Mrs. L. E. Haskell the land involved, subject to the P. C. Foley note for the sum of $8,000 above mentioned, and the liens existing to secure the payment of same, the $8,000 note executed by Bell to Marmion and Giraud, and the eleven $500 notes executed by Miller to Caulk.

E. A. Giraud died on the 9th day of July, 1921, and W. L. Stark and Ike White qualified as independent executors of his will, and under and by virtue of powers conferred upon them by the will of Giraud they, on the 12th day of March, 1923, conveyed to J. R. Marmion all of the interest the estate of Giraud had in and to the land involved, together with all minerals of every kind on, in, and under the same.

On the 31st day of March, 1923, W. P. Hamblen, as trustee in the Foley deed of trust, executed a release, whereby he released from the deed of trust lien all oil, gas, and other minerals on and under the land involved, and all rights of reversion and royalties on, in, or to such oil, gas, and minerals; it being recited in such release that the same was executed so that any sale of the lands made under foreclosure of the deed of trust in any manner whatever shall not convey or in any wise affect the rights of royalties and reversionary rights to oil, gas, and other minerals upon and under the land which were retained by Giraud and Marmion in their deed to J. P. Bell.

The $8,000 note executed by Marmion and Giraud to Foley was not paid to them, or by Bell, who had assumed its payment, or by any one holding under them.

In manner and form as required by law, Hamblen, as trustee for Foley, in October, 1924, sold all of the land, except the oil, gas, etc., thereon and thereunder, to one O. R. Weyrich to satisfy said note due Foley.

J. P. Bell and those claiming the land under him paid the two notes, one for $4,000 and the other for $8,000, executed by Bell to Marmion and Giraud, and H. F. Caulk paid $5,640 on the Foley note.

On October 14, 1924, J. R. Marmion conveyed to O. R. Weyrich fifteen-sixteenths of all oil, gas, and other minerals in, on, and under the land, and on the 12th day of December, 1924, O. R. Weyrich conveyed to J. R. Marmion the land involved, together with all minerals thereon or thereunder.

H. F. Caulk brought this suit against J. A. Miller, his vendee, O. R. Weyrich, J. R. Marmion, Mrs. L. E. Haskell, and her husband, C. N. Haskell. By the suit he seeks a recovery of a personal judgment against J. A. Miller for the sums paid by him upon the notes executed to Marmion and Giraud by Bell which were assumed by him, and which were in turn assumed by Miller in part payment for the land when conveyed by him to Miller, and also for the sums due upon the eleven notes for $500 each, executed by Miller to him; a recovery for a personal judgment against C. N. Haskell, husband of Mrs. L. E. Haskell, for the sums due upon notes assumed by Mrs. Haskell in the purchase of the land from Miller, and for a foreclosure of his lien on the land as against Miller, C. N. Haskell, and Mrs. L. E. Haskell, and as to defendants J. R. Marmion and O. R. Weyrich he prays for a foreclosure against them of his asserted

lien upon all the minerals in, upon, or under the land.

Weyrich answered, wherein he pleaded a general denial and declared that he had sold and conveyed the land to J. R. Marmion and thereby entered a disclaimer.

Haskell and wife filed a disclaimer of any interest in the land.

Defendant J. R. Marmion answered by general denial and plea of not guilty, and by way of reconvention pleaded, as against plaintiff Caulk and the defendants Miller and Mrs. and Mr. Haskell, that he was the owner in fee simple of all of the land involved in the suit and was entitled to all the oil, gas, and other minerals on, in, or under the same, and that defendants were unlawfully in possession of said lands, etc. He also specially pleaded his title from the common source of J. R. Marmion and E. A. Giraud, who conveyed the same to J. P. Bell.

By supplemental petition plaintiff denied generally and pleaded not guilty, recited the provisions of the deed from Marmion and Giraud, and alleged that by reason of such provisions J. R. Marmion was estopped from claiming the minerals or any interest therein, as he had made collections upon the notes given in part payment for the land and had made demand for further payment thereon, without at the same time making demand for any mineral rights or a declaration of forfeiture.

Defendant J. A. Miller's residence was unknown, and he was cited by publication and was represented by an attorney appointed by the court for that purpose. The answer of Miller was a general denial of the allegations of the answer of defendant Marmion.

By supplemental answer Marmion denied generally the allegations of the plaintiff's supplemental petition.

In January, 1927, the court rendered an interlocutory order reciting that the Haskells and Weyrich had filed disclaimers as to any interest in the land, and decreeing that J. R. Marmion have, under his cross-action, judgment against them for title and possession of the land and the oil and other minerals thereon and thereunder.

The cause was finally tried before the court without a jury in July, 1928, eighteen months after the interlocutory order had been entered, and upon the facts stated judgment was rendered in favor of J. R. Marmion on his cross-action against the plaintiff and all defendants for title and possession of all the land involved in the suit, together with all oil, gas, sulphur, and other minerals on, in, and under the same, and against the plaintiff in favor of each and all of defendants named in his petition.

The plaintiff, H. F. Caulk, has appealed.

It is agreed by all parties to this appeal that the material controlling questions involved in the appeal are all determinable by a proper construction of the provisions of the deed executed by Marmion and Giraud to J. P. Bell, which we have hereinbefore set out.

Appellant contends that such deed conveyed to Bell the fee-simple title to the surface and seven-eighths of the minerals thereon and thereunder.

Appellee J. R. Marmion contends that in construing a written instrument the intention of the parties as gathered from the instrument as a whole should be considered, and that if such intention can be ascertained by such consideration, such intention should control; that it clearly appears from the deed in question that the parties intended thereby to sever the minerals from surface or soil of the land conveyed; that the grant or conveyance of seven-eighths of the minerals was for the purpose of having the grantee or lessee to prospect for, develop, and produce such minerals upon and in accordance with the conditions expressed therein. He contends that the prospecting for, and the development and production of, such minerals by the grantee in the deed and the delivery to him of one-eighth of the oil produced, etc., constituted the material part of the consideration for the conveyance to the grantee of seven-eighths of the minerals; that by the deed the grantors expressly reserved one-eighth of the minerals in and under the land conveyed, and Bell, the grantee, acquired thereby only a defeasible or determinable fee-simple title to the remaining seven-eighths of same; and that, as Bell and those claiming under him wholly failed to comply with and perform the conditions and provisions stipulated as the consideration for acquiring title to such seven-eighths of the minerals, the title of Bell and those claiming under him to such seven-eighths terminated without any declaration of forfeiture being made by the grantors or of any re-entry by them, and no reconveyance was necessary to revest the title to such minerals in grantors; but that, if such declaration of forfeiture or re-entry was necessary, the contract made by Bell's grantors with Helm and the taking possession of the land for drilling purposes and the drilling of the well under such contract constituted a declaration of forfeiture by the grantors of the rights of Bell and those claiming under him to such minerals, and also re-entry by the grantors; and that the filing and prosecution by appellee Marmion of his cross-action in this suit was a sufficient declaration of forfeiture.

We are not prepared to sustain the contention of appellant, but, to the contrary, we think the contention of appellee is sound and should be sustained. In the deed it is expressly stated that: "If the grantee (Bell) shall fail to commence actual drilling operations within six months herefrom, or shall fail to continue drilling operations as herein set out, or shall fail to finish five wells * * * he shall * * * forfeit all rights to all the minerals on or under said land."

It is shown that the grantee, Bell, failed to perform any of the acts required of him as above stated. By the very terms of the deed under which Bell, and those claiming under him, acquired the land, Bell forfeited any and all manner of title he had to the minerals upon his failure to perform the things required of him by the deed. It is shown that, exercising their rights after such forfeiture had taken place, the grantors, Marmion and Giraud, through their vendee or lessee, Helm, re-entered and took possession of the minerals on and under the land so far as such possession could be taken, and now in this suit J. R. Marmion, one of the grantors of Bell, and as one claiming the interest formerly owned by Giraud, the other grantor, by mesne conveyance, by cross-action is asking the court to enter a decree declaring a forfeiture of the minerals by Bell to him as the successor in title to Marmion and Giraud, and establishing in him title and possession of the aforesaid minerals.

It seems to be conceded that the title to the land, as distinguished from the minerals, passed to and is now owned by appellee Marmion, discharged of all liens by virtue of the sale of the same by Hamblen, trustee, to Weyrich, and by virtue of the conveyance of the same by Weyrich to appellee, and that the controversy is now confined as to the title to the seven-eighths of the minerals on and under the land.

■ It is apparent from the deed of Marmion and Giraud to Bell that the consideration to be paid for the land, as distinguished from the minerals, and the services to be performed by Bell as a consideration for seven-eighths of the minerals, were several, neither dependent upon the other.

Had Bell or those claiming through or under him discharged the vendor's lien retained in the deed made to Bell by the payment of the obligations assumed by him and them, the conveyance of the land would have become absolute and the title to the land, separate from the minerals, would have passed unincumbered to Bell or those claiming under him. But such payments and discharge would not have passed the title to the minerals from the grantors to Bell and those claiming under him. As before stated, by the express terms of the deed the title to the seven-eighths of the minerals was to pass to Bell only upon performance by him of certain acts of development stipulated in the deed. It is, we think, clearly apparent from the deed that it was the intention of the parties to separately and severally dispose of the land, as distinguished from the minerals underlying it, thus effectually dividing the property into two parts.

■ It seems to be well settled that where, as in this case, it is the intention of the parties to a conveyance of land to separate the title in fee to the minerals in place from the title in fee to the remainder of the land, effect will be given to such intention. Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S. W. 296, 29 A. L. R. 607, and authorities there cited.

■ Oil and gas in place are "minerals" and realty subject to ownership, severance, and sale while embedded beneath the soil, in like manner and to the same extent as coal or any other solid mineral. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Texas Co. v. Daugherty, 107 Tex. 234, 176 S. W. 717, L. R. A. 1917F, 989; Caruthers v. Leonard (Tex. Com. App.) 254 S. W. 779.

■ One occupying the position of Bell in the present case stood in the attitude of a lessee under a mineral lease for the purpose of prospecting for minerals and the production of same from the surface of the earth after the discovery thereof. In such case the lessee must pursue the purpose of the parties in making the lease, or his title and estate in such minerals will terminate ipso facto upon his failure to make such pursuit. Caruthers v. Leonard (Tex. Com. App.) 254 S. W. 779; Smith v. Harris (Tex. Civ. App.) 252 S. W. 836; Stephenson v. Calliham (Tex. Civ. App.) 289 S. W. 158.

Having reached the conclusions above expressed, it becomes our duty to affirm the judgment, and it is so ordered.

Affirmed.