**ATWOOD et al. v. KLEBERG et al.**

**No. 10055.**

Circuit Court of Appeals, Fifth Circuit.

Jan. 27, 1943.

Rehearing Denied April 6, 1943.

Thomas Hart Fisher, of Chicago, Ill., and Brady Cole, of Houston, Tex., for appellants.

Robt. W. Stayton, of Austin, Tex., Leroy G. Denman, of San Antonio, Tex., Leroy G. Denman, Jr., of Houston, Tex., B. D. Tarlton, and Marcellus G. Eckhardt, both of Corpus Christi, Tex., Felix A. Raymer, R. E. Seagler, and Robert F. Campbell, all of Houston, Tex., and Jacob S. Floyd, of Alice, Tex., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellants are three of the legatees under Mrs. King's will. Appellees are the other legatees, the trustees under her will, and the Humble Oil Company, holding an oil and gas lease executed by them.

An action to quiet title to all the minerals in the 1,000,000 acre King ranch, the suit had two branches or aspects, each relating to, but not identical with, the other. One of these was to establish the existence of a trust of the minerals, fix plaintiffs' undivided interest therein and secure the appointment of a successor trustee. The other was to cancel the lease.

On the first branch of the case, the claim was: that Mrs. King had by an instrument[1] creating a mineral trust and conferring large powers on the grantee, severed all the minerals from her lands, con-

[1] This instrument, dated March 1, 1919, appointed Robert J. Kleberg, Sr., Agent and Attorney-in-fact, giving him extensive powers as Attorney-in-fact, in reference to the minerals in the land, including power to lease and sell, conveyed to him in fee simple ³⁄₃₂ undivided interest and then added the following language:

"I, the said Henrietta M. King, have bargained, sold, assigned, transferred and set over, and by these presents do bargain, sell, assign, transfer and set over in trust however unto him, the said Robert J. Kleberg, the other and remaining twenty-nine thirty seconds parts * * * (describing the minerals) this declaration of trust, and the trust hereby created, to continue to be, and exist, and continue in full force and effect, for the full term of fifty (50) years from this, the First (1st) day of March, A. D. 1919, for the Uses and Purposes, and for all such Uses and Purposes, and for the benefit of all such person or persons, as I may hereafter, in writing designate and declare, or by my will provide for, otherwise this said twenty-nine thirty-seconds (29⁄32) of all such Oil, Gas, Sulphur, Coal, or other Minerals to be, and remain, my own property, and for my Own Sole Use and Benefit, and at my death, unless disposed of, be, and constitute a part, of my Estate."

veying $\frac{29}{32}$ of them in trust for the benefit of herself and the other beneficiaries designated in her will; that by such instrument, the trustee became vested with both the legal and the equitable title to the minerals with powers enabling him to completely convert the mineral interests of the beneficiaries, their only right in them being the cash from such conversion; that these severed interests passed under the provisions of Mrs. King's will in undivided interests; that the devisees of specific tracts of land and the distributees under the residuary trust clause thereof took their devises and distributions burdened with an undivided mineral interest outstanding under the trust; that Kleberg, the named trustee, remained until his death trustee of these interests; and that since his death, though no trustee has been named, the severance of the minerals from the land and the trust as to them has continued. There was a further claim that plaintiffs' interest under the will instead of being $\frac{9}{64}$ as contended by the defendants, was $\frac{9}{16}$, and the still further claim that the $\frac{3}{32}$ mineral interest conveyed to Kleberg had lapsed, and plaintiffs were entitled to their proportionate part of that $\frac{9}{16}$.

On the second branch of the case, the claim was: (1) that the minerals having been severed and placed in a mineral trust, the trustees under Mrs. King's will had no title to them which would support the lease they made to the Humble Oil & Refining Co.; (2) that if they did have title, the lease was invalid because they had no power under the will to make a lease of property lasting beyond the ten year term for which they were appointed trustees, and (3) the lease was so grossly improvident in its terms and conditions as to amount to an abuse of their trust.

There were voluminous pleadings and, in addition to the two controlling documents, the mineral trust and Mrs. King's will, a mass of evidence, oral and documentary. The district judge, because the same matters were at issue in another suit then pending in the same court, reserved all questions as to whether the trustees under Mrs. King's will had fairly selected and distributed the particular properties partitioned under the residuary clause of her will, and decided all of the other questions against plaintiffs. They have appealed and here present two primary and eight subordinate questions for decision.[2] To an understanding of the questions thus raised, two instruments are of prime importance, the mineral trust, summarized in the note above, and Mrs. King's will. The important

[2] These questions as appellants summarize them are:

(1) Did the mineral trust instrument executed, acknowledged and delivered inter vivos by Mrs. Henrietta M. King on March 1, 1919, sever all the minerals from all her lands in Texas and convey $\frac{29}{32}$ of the minerals in trust for the benefit of herself and those other beneficiaries whom she designated in her will (the remaining $\frac{3}{32}$ of the minerals being likewise severed and conveyed as compensation for the mineral trustee's services); and should the court appoint a successor trustee thereunder to succeed the deceased mineral trustee, Robert J. Kleberg, Sr. (herein also called 'Kleberg' or the 'mineral trustee')?

(2) Did the mineral trustee thereby hold both legal and equitable title to the $\frac{29}{32}$ minerals to enable him to liquidate them, the sole interest of the beneficiaries being the right to receive the cash proceeds of their liquidation?

(3) Are defendants (appellees) estopped (by deeds, by judicial proceedings, by judgments and decrees in rem, as well as by their actions and constructions) to deny that the mineral trust severed the minerals from all of Mrs. King's lands and placed said minerals under said trust for the term of fifty (50) years from March 1, 1919?

(4) Was the deed of July 3, 1929, from Kleberg to the residuary trustees under Mrs. King's will null and void, and ineffective either (1) to convey the $\frac{29}{32}$ minerals to the residuary trustees, or (2) to substitute the residuary trustees as mineral trustees under the mineral trust?

(5) Was the decree appealed from entered upon hearsay and other objectionable evidence sufficient to require a reversal thereof?

(6) Was the mineral lease from the residuary trustees under Mrs. King's will to Humble Oil & Refining Company (herein also called 'Humble') of Sept. 26, 1933, null and void because (1) the title to the minerals was not then in the residuary trustees but was in the mineral trustee; or, in the alternative, because (2), if the mineral trust had terminated prior to Sept. 26, 1933, the residuary trustees under Mrs. King's will, whose 10-year trust expired March 30, 1935, as lessors had no power to make leases extending $18\frac{1}{2}$ years and possibly longer beyond the termination of the residuary trust?

(7) Was the mineral lease from the residuary trustees to Humble of Sept. 26, 1933, which involved a loan of $3,223,-

provisions of the will executed in 1918, and probated in 1925, when she died at the age of 92 years, are (1) a provision appointing executors and providing for the payment of debts and expenses of administration; (2) specific devises and bequests of lands; (3) a residuary devise of all the rest and residue of her estate, real, personal and mixed, consisting of approximately 1,000,000 acres, cattle, ranch houses, equipment, etc., to eight trustees, R. J. Kleberg, Sr. and seven others, for a period of ten years from the date of her death, and until the final partition and distribution by them of all of her residuary estate. Directed to make due provision for the payment of taxes and expenses, and if they have sufficient funds left, to make the monthly payments provided for in the will, the residuary trustees were granted the broadest powers: to possess, hold, have, conduct, manage and control, lease, bargain, sell, convey and deliver or exchange the trust estate, or any of the properties, and to invest their proceeds as in their judgment they deem best; to borrow any monies upon and execute and deliver all necessary notes, mortgages and deeds of trust to secure the payment of same; to have, receive, collect, hold, disburse or invest the trust estate; and generally do any and all things in the premises which Mrs. King would or could do if living and personally present and acting. They were particularly authorized to keep up and make all necessary improvements or changes in the lands, to employ any and all necessary persons to carry on the business and do all such acts in reference to the trust estate or any part of it as an owner similarly situated might do, not inconsistent with the provisions of the will. Upon the expiration of the trust period, the residuary trustees were mandatorily directed to partition and distribute the entire residuary trust estate to her children and grandchildren, as follows: To her son, Richard King, and to her daughter, Alice Kleberg, or their descendants, if deceased, each, the whole, and to her granddaughter, Henrietta Welton Page, or if deceased, to her descendants, and to her grandchildren, the children of Nettie King Atwood, or if deceased, to their descendants, each, one-half, of (a) certain specifically devised lands and property, (b) one equal one-fourth of all other personal or mixed property not otherwise devised or bequeathed which at the final partition of her estate remained in the hands of the trustees subject to partition and (c) one equal one-fourth of all other property, real, personal or mixed, not otherwise specifically enumerated, devised or bequeathed, then subject to partition. Robert J. Kleberg, Sr., was given a controlling voice in the management of the trust and upon his death, the majority of the trustees were to control. The will appointed Robert J. Kleberg, Sr., and three others of the trustees as executors. Captain and Mrs. King had four children, all but one of whom, Alice Kleberg, predeceased their mother. Mrs. King's descendants on the date of her death were (1) the children of her son, Richard King, (2) Henrietta Welton Page, the child of Ella King Welton, her daughter, (3) the children of Nellie King Atwood, her daughter, of whom three are plaintiffs and one is a defendant, and (4) her daughter, Alice Kleberg.

In addition to these two documents, plaintiffs offered Captain King's will in support of their claim that as to one-half of the property, they took by inheritance from him and Mrs. King could not limit their interest, as the trustees had construed her will as doing. A mass

645.52 to the residuary trustees as part of the transaction, null and void as constituting a breach of trust under Mrs. King's will?

(8) Were the partition deeds of March 30, 1935, in so far as they distributed the mineral interests, null and void because in violation of the mineral trust and the provisions of Mrs. King's will for the distribution of her residuary trust estate?

(9) Are plaintiffs under the residuary clauses of Mrs. King's will the owners of an undivided 3⁄16 (or 18.75%) interest under the mineral trust and an undivided 3⁄16 interest in any minerals unliquidated upon its termination · or, if the Humble leases are valid an undivided 3⁄16 interest in any minerals unliquidated upon its termination, (or, if the Humble leases are valid, an undivided 3⁄16 interest in all rentals and royalties thereunder)?

(10) Did the will of Captain Richard King devise and bequeath to this widow, Mrs. King, a life estate in all property, including minerals owned by him in community with her on the date of his death, with power of use and disposition during her lifetime, together with a general power of appointment by her will over the remainder?

of evidence was offered by plaintiffs and defendants in support of the construction each claimed for the documents and in support of the contentions each made in regard to the validity and unimpeachability of the lease. This evidence covered a wide range; as to mineral leases made by Kleberg, as mineral trustee and deeds made by him, as agent, during Mrs. King's lifetime; as to the controversy over the lease made by Richard King to the Texas Company after Mrs. King's death in view of the existence of the mineral trust and of the $\frac{3}{32}$ interest it conveyed to Kleberg personally; as to the settlement of that controversy by recognizing Kleberg as the owner of the $\frac{3}{32}$ interest, and King, as owner of the land, as owning the balance of the mineral interest; as to the surrender to Kleberg, as mineral trustee, of the mineral leases he had executed; as to deeds made by Mrs. King's executors and residuary trustees; as to litigations in which Kleberg had intervened and had had adjudicated to him, as mineral trustee, certain of the lands, including particularly what is known as the Tule partition decree; as to the deed Kleberg, as mineral trustee, made to the trustees under the will to the $\frac{29}{32}$, retaining $\frac{3}{32}$ for himself; as to the financial straits the estate found itself in; as to the efforts the trustees made to extricate themselves by leasing the mineral interest; and as to the negotiations with, and final making of the lease to, the Humble Oil Company, including a mass of evidence as to the value of the minerals, and whether the lease was, as plaintiffs contended, grossly unwise, imprudent and a breach of trust, or, as defendants contended, wise and prudent and within the powers of the trustee. Finally, there was evidence that the trustees divided the residuary estate in the following proportions: $\frac{35}{64}$ to King Ranch, the assignee of Mrs. Kleberg, Mrs. Page and Mrs. Baldwin, one of the Atwoods, $\frac{20}{64}$ to Richard King and his sisters, and $\frac{9}{64}$ to the plaintiffs, three of the four Atwoods, the partition being made subject to the Humble lease and subject to the Kleberg $\frac{3}{32}$ mineral interest. The result of this was that plaintiffs and all of the other legatees received all of the minerals in the specific lands they got under the distribution instead of, as plaintiffs claimed they should, because of the mineral trust have gotten, a fractional interest in all the minerals in all the lands. On the point plaintiffs made, that instead of $\frac{9}{64}$ as the residuary trustees thought, they were entitled to $\frac{12}{64}$, the district judge found: (1) that under Captain King's will, Mrs. King took a fee simple estate and not a life estate as claimed by plaintiffs, that plaintiffs inherited nothing from him, and were entitled only to the interests devised to them under Mrs. King's will; (2) that the fractions used by the trustees in partitioning the residuary estate among Mrs. King's legatees were the correct ones.

Upon plaintiffs' main point that the mineral trust severed the minerals, and while they passed under Mrs. King's will as a part of her residuary estate, they passed as minerals subject to the trust and for conversion into and distribution as cash, and not as part of the lands, the district judge found that if there ever was a sufficient designation of beneficiaries so that the trust became effective (and there was a contention that it did not for want of named beneficiaries) by its express terms, on Mrs. King's death without having named any beneficiary, use or purpose, the trust terminated, the severance ceased, the minerals became and were a part of the lands devised and passed as a part of it to the respective devisees.

Upon plaintiffs' point that the acts of the mineral trustee and of the executors and residuary trustees, particularly their acts in appearing and taking judgments, in suits, constituted a recognition of the mineral trust after Mrs. King's death and an estoppel to deny its continuance, he found that their acts and conduct as a whole conclusively established that the executors and residuary trustees had treated the mineral trust as not in effect after Mrs. King's death and had dealt with the minerals as not severed from but as united with and a part of the lands and so passing under her will. He made particular findings to the effect that in the few instances after Mrs. King's death in which Kleberg had acted as mineral trustee, it was done out of an abundance of caution and to satisfy purchasers and in ratification of the same action he had already taken as executor and trustee. With regard to the suits, particularly to the Tule partition suit, of which plaintiffs made so much, he found that it was not effective to change the construction and effect of the mineral instrument and the will because Kleberg's intervention as mineral trustee was not authorized by him or the executors and residuary trustees, because the litigation as conducted was not

in respect of the matters in question here, adversary or intended or capable of having the effect of binding Mrs. King's legatees as to the continued existence of the mineral trust, and because none of the parties to this suit were parties to it, and these suits and the decrees in them could not be binding as res judicata.

As to the Humble lease, the court found that it was fully authorized, that there was no bad faith or lack of business judgment in regard to it, no fraud, no duress, and that it was valid and binding.

■ Here with a wealth of argument and citation of authority, appellants labor their points against the decree, while appellees with equal citation of authority, if not quite so much argument, counter them. It will serve no useful purpose for us to discuss, either to approve or disapprove, the particular cases each cite. It is sufficient for us to say that we find no substantial conflict in the authorities and that the answers to the questions appellants propound, Note 2, supra, are to be found in the application of settled and well understood principles to the substantially undisputed facts rather than in refinement upon, and differentiation in respect to, the cases each cites. An answer, therefore, to the questions propounded by plaintiffs as to whether the mineral trust effected a severance of the minerals which continued after Mrs. King's death and her will devised the severed minerals subject to the trust, is to be found not in the answer to whether under Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S.W. 296, 29 A.L.R. 607, and Munsey v. Mills & Garitty, 115 Tex. 469, 283 S.W. 754, and other cases cited by the parties, Mrs. King could have effected such a severance of the minerals from her land, but in whether the language used in the instruments had that effect. For it may not be doubted that if she had so desired and had used language to give this desired effect, she could have done so. Likewise, answers to the other questions they propound are to be found not in an analysis of the various decisions cited but in a determination as to the effect of the documentary and oral evidence. Reserving for the last, appellants' primary questions, (1) as to the continuance and effect of the mineral trust instrument, a question dealt with in appellants' questions 1, 2 and 8, and (2) of the quantum of their interest dealt with in their questions 9 and 10, we take up to dispose of, the other and subordinate questions (a)

whether, as propounded in question 5, there was reversible error in admitting evidence over plaintiffs' objection, (b) what effect the deeds, decrees, proceedings, etc., dealt with in questions 3 and 4, had, as estoppel or otherwise, upon the determination of the primary question, and (c) whether the mineral lease to the Humble Oil and Refining Co. was invalid.

■ The first question may be shortly disposed of by saying that whether the objections to the evidence were, abstractly considered, good or bad, was wholly immaterial in its effect upon the decree for the proceeding was in equity, and there was ample evidence outside of that objected to to support the judgment. As to the question regarding the deeds, judgments and judicial proceedings relied on as an estoppel, the short and simple answer is that they are not and cannot constitute an estoppel for neither the plaintiffs nor the defendants in the right in which they now appear in this court were parties to or authorized them. Their rights arise out of and are to be determined by the legal effect of the language used in the mineral trust and the will. No action of either the mineral trustee or the trustees in the will in derogation of the terms of those instruments could be effective as an estoppel or otherwise against them. For the same reason, the deed of July 30, 1929, from Kleberg to the residuary trustees under Mrs. King's will was without effect, for if the trust was in fact and in law continued, Kleberg had no authority to bring it to an end, neither did he have any to appoint substitute trustees. It is quite plain that the residuary trustees did not consider themselves as mineral trustees and that the deed was taken and given in recognition of the fact that the mineral trust had come to an end, and to evidence a quit claim and surrender by Kleberg of any claims as trustee to the $^{29}\!/_{32}$ and a recognition that title to the $^{3}\!/_{32}$ was fully vested in him. The answers to questions 6 and 7, dealing with the Humble lease, are as simply and easily arrived at. If, and this will be determined in answers to questions 1, 2 and 8, the title was in the residuary trustees, it is quite plain that they had power under the will to make the lease and equally plain that the evidence fully and amply supports the finding of the district judge that the transaction was not a breach of trust but was a provident one in the interest of the estate and binding upon it. We answer in the

negative questions 9 and 10, which have to do with the quantum of interest appellants took under Mrs. King's will. The district judge was clearly right in his conclusions; that Captain King's will manifests and gives effect to an intention to vest Mrs. King with a fee simple rather than a life estate; that appellants take only under her will; and that they took by it not ³⁄₁₆, as they claim, but ⁹⁄₆₄ of the residuary estate.

We come at last to the primary questions in the case: (1) whether the trust instrument definitely and effectively created a trust in a mineral estate severed from the lands with named beneficiaries, uses and purposes to last for fifty years; (2) whether this trust continued after Mrs. King's death, with the result that the lands granted and devised by her went to the grantees and devisees not united with but severed from the minerals, and no mineral interest passed thereby; and (3) whether the minerals in the mineral trust passed as severed minerals as a part of the residuary estate to be distributed among the beneficiaries not as land, a part of the particular lands they owned, but as undivided mineral interests, subject to the trust, in all of the lands in proportion to their interest in the residuary estate.

The district judge, convinced that if the trust had ever been effective, it by its terms came to an end and title to the minerals was merged with title to the lands of which they were a part when Mrs. King died without having named uses, purposes or beneficiaries, and the title to the minerals passed with and as a part of the title to her lands, thought it unnecessary to determine whether the mineral trust failed from the beginning to take effect for want of the designation of uses, purposes and beneficiaries. We are of the same opinion. We recognize that there is considerable force in the contention, that the failure of the instrument to designate any beneficiary or any use and purpose, its careful provision: "this declaration of trust and the trust hereby created to continue to be and exist and continue in full force and effect for the full term of 50 years from this, the 1st day of March, A. D. 1919, for the uses and purposes and for all such uses and purposes and for the benefit of all such person or persons as I may hereafter in writing designate and declare or by my will provide for"; and Mrs. King's failure either by other writing or by her will to so designate, shows it to be an un-

finished and incomplete instrument, and, therefore, without effect as a declaration of trust. We find it, however, unnecessary to decide this contention, for we are quite satisfied that however this may be, her failure to so designate, in connection with the last clause of the instrument, "Otherwise, this said ²⁹⁄₃₂ of all such oil, gas, sulphur, coal and other minerals to be and remain my property and for my own sole use and benefit, and at my death unless disposed of, be and constitute a part of my estate", prevented its survival after her death and brought it to an end. Though the will executed before, and the deeds Mrs. King executed afterwards in ademption of specific legacies, make no mention of the trust instrument and none of the minerals as minerals, appellants in effect urge us to declare that neither the deeds nor the will passed title to the minerals as part of the lands dealt with in them, but they remained severed and passed under the will to each of the residuary legatees in proportion to his or their interest in the residuary estate as severed minerals under a mineral trust by which, though nothing of the kind is stated in the instrument, their interest was to be realized not in kind but in cash. In so insisting, appellants stand on extremely narrow ground, their footing most precarious. Instead of lending support to their claim, a common sense reading of the mineral trust instrument in the light of the undisputed facts makes it quite plain that the settlor, then ready to vest Kleberg with the title, upon trusts to be thereafter named, and to confer upon him power of attorney enabling him to deal as her agent, gave him authority to deal for her in making mineral leases on the lands. Having in mind to supply at a later date the uses, purposes and beneficiaries of the trust in the mineral interests leased, but having also in mind that she might decide not to complete the trust, she did not leave the question, whether her intention to perfect it had been abandoned and the trust had failed, for determination without guide or clue. On the contrary, in the instrument she stated positively in effect that if by her will or some other affirmative writing she did not complete the instrument by naming uses, purposes and beneficiaries, the trust would terminate and all the minerals less the ³⁄₃₂ conveyed to Kleberg would be and remain her property and at her death, unless disposed of, be and constitute a part of her estate. In the face of this clear ex-

pression of intent that the $^{29}\!/_{32}$ mineral interest would be and remain her property if she made no designation of purposes, uses and beneficiaries, there is no basis for the claim that she intended to continue the trust and thus to deprive herself, and the grantees and devisees of her land, of the title to the minerals as merged in and a part of the land. We find no error in the judgment, and it is affirmed.