**ATWOOD et al. v. KLEBERG et al.**
(two cases).

**SAME v. KING et al.**

Nos. 11704, 11717, 11718.

Circuit Court of Appeals, Fifth Circuit.
July 2, 1947.

Motion to Amend Opinion and Rehearing Denied Aug. 21, 1947.

Writ of Certiorari Denied Dec. 22, 1947.
See 68 S.Ct. 268.

WALLER, Circuit Judge, dissenting in part.

———◆———

Garrett R. Tucker Jr., of Houston, Tex., and Thomas H. Fisher, of Chicago, Ill., for appellants.

Leroy G. Denman, of San Antonio, Tex., R. E. Seagler, of Houston, Tex., B. D. Tarlton, of Corpus Christi, Tex., and Robt. W. Stayton, of Austin, Tex., for appellees in No. 11704.

Leroy G. Denman, of San Antonio, Tex., Felix A. Raymer, R. E. Seagler, and Robert F. Campbell, all of Houston, Tex., B. D. Tarlton and M. G. Eckhardt, Jr., both of Corpus Christi, Tex., and Robt. W. Stayton, of Austin, Tex., for appellees in Nos. 11717 and 11718.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

These three appeals, with the two in Nos. 11,625 and 11,658, 5 Cir., 163 F.2d 104, which were submitted at the same time, test the correctness of decrees,[1] bringing to an end in the District Court a long standing and bitter family controversy [2] between ap-

---

[1] These were entered in Equity #74, a suit against the trustees and Mrs. Kleberg, one of the beneficiaries, for an accounting, Equity #74 Ancillary against the trustees and others, and Equity #102 against the trustees and the other devisees under the will for review and revision of a partition in purported compliance with the terms of the will. Except that relief was granted in respect to the Richard Atwood special trust fund, dealt with in appeals #11,625 and 11,658 recently decided, these decrees sustained the actions of the trustees and denied plaintiffs the relief they sought.

[2] This was its beginning and its course:
On November 22, 1933, Edwin K. Atwood and Alice B. Atwood, two of the legatees under the will of Henrietta M. King, deceased, filed in equity No. 74 a complaint against the six trustees under her will, and later amended it to include as a defendant, Alice G. K. Kleberg, one of the devisees under the will.

Alleging violations and breaches of trust, the suit was for an accounting by the defendants, a judgment: that they pay over to the trust estate all moneys found to be due on the accounting; that a trust in favor of the estate be declared and imposed upon all of its assets which had been improperly and unlawfully transferred to any of the defendants; that the accounts of the six trustees be submitted to the court for examination; that the defendants be removed as trustees and suitable and qualified persons be appointed in their stead; and for general equitable relief.

On April 28, 1936, plaintiffs filed a supplement to the bill of complaint advising that the trustees had completed the ten year period of their trusteeship under the will and have undertaken to distribute the estate, and praying that the accounting be extended to cover the entire period of the trusteeship down to the date of trial.

On May 4, 1936, the District Judge appointed Wilmer B. Hunt as Master to conduct the accounting.

On July 14, 1937, the District Judge ordered that the costs in the accounting be temporarily and tentatively taxed 50 percent against plaintiffs and 50 percent against defendants, reserving final dis-

pellants, grandchildren and devisees of Mrs. King, on the one hand, and, on the other, the remaining devisees and the trustees appointed by Mrs. King to carry out her will.

Appealing from these judgments, plaintiffs are insisting, as to the judgment in the accounting suit, that the decree must be reversed and remanded for findings in accordance with the requirements of Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, because, instead of making specific findings of his own, the judge merely adopted those of the master, but if not, it must be reversed for error in respect of the several matters, 55 separate items, set up as breaches of their trust for which the trustees should be required to account. In addition they vigorously attack as erroneous the taxing against plaintiffs of all the court costs in the accounting action, insisting that they should have been charged against the trustees, or at least against the trust.

Against the decree respecting partition in Ancillary No. 74 and in Equity No. 102,

appellants level twelve specific attacks. In addition they strenuously object to the division of the costs, insisting that they should have been charged against all of the parties in proportion to their interests in the subject matter of the suit.

We shall dispose of these appeals in one opinion, for, while we recognize that each appeal raises questions which are different from those raised in the other, some of the questions raised in both appeals are the same, and, more important, it is perfectly clear that in the main the same general considerations underlie the determination of all the questions raised in both appeals. Throughout these long drawn out controversies, plaintiffs have proceeded as though the carefully drawn terms of the will, by which Mrs. King manifested the greatest confidence in her trustees, some of them of her own blood, and vested in them the widest powers and the greatest discretion, were without significance or bearing on the issues involved, were nugatory and ineffective; it is important, therefore, in begining this opinion to refer to those terms [3]

---

position of the costs until the final decree.

On May 25, 1939, plaintiffs filed their bill of particulars in which, reserving the right to make additional contentions at the conclusion of the evidence, plaintiffs, under 68 numbered paragraphs, particularized their complaints and charges, and on November 12, 1942, the Master filed his findings of fact in the cause.

In the meantime, while the cause was pending before the Master, plaintiffs filed ancillary bills of complaints in cause No. 74 and two other suits, Equity No. 101, which was tried, appealed and the judgment affirmed in Atwood v. Kleberg, 5 Cir., 133 F.2d 67, and Equity No. 102, the decrees in which are the subject of the appeals in Nos. 11704, 11717, 11,625 and 11,658, 5 Cir., 163 F.2d 104.

On January 31, 1944, Equity No. 74 was heard on its merits before the court, when there were offered in evidence the Special Master's report, the record of approximately 18,000 typewritten pages and 1000 exhibits made and offered before the Special Master, and as his findings and judgment in the cause, the District Judge adopted the Special Master's report with the exception of that part of it which undertook to deal with the partition issues, which issues were reserved for separate decision, and taxed

all costs against the plaintiffs. No. 11718 is the appeal from this decree.

On May 15, 1945, the District Judge disposed of the partition issues tendered in Equity No. 102 and in ancillary bill of complaint in Equity #74. Making findings of fact and conclusions of law which considered and rejected all of plaintiffs' contentions in respect to them as not well taken, he found that the plan of partition was fair and that it was fairly executed and he entered judgment that the plaintiffs take nothing and that the costs in Equity No. 102 and Equity No. 74 Ancillary be taxed one-fourth to the defendants and three-fourths to plaintiffs. Nos. 11704 and 11717 are appeals from this decree.

[3] In a long and detailed document requiring many things to be done and the exercise of the greatest judgment and discretion, Mrs. King, in Paragraph Eight, after making specific bequests, devised all the rest and residue of her property to her trustees, one of them her son-in-law and two of them her grandsons, "in trust nevertheless for the full period of ten years from the date of my death, and until the final partition and distribution by them of all my property and estate, as herein provided,—In Trust, for the following purposes and dispositions, to-wit:

and to state that the Master and the District Judge properly gave to those terms the weight to which they were entitled in the determination of the tendered issues.

## I.

"To, in all things as I would, or could, if living, possess, hold, have, conduct, manage and control, to lease, bargain, sell, convey and deliver or exchange, to borrow any monies upon, and execute and deliver all necessary notes, mortgages and deeds of trust to secure the payment of the same,—and therefrom, and thereto, to have, receive, collect, hold, disburse or invest, any and all monies, funds, property, or other thing that may thus come into their hands or possession, during the period of this trust—and also, thereto, at any and all times, to make any such purchases, or investments, and to create any such Special Funds, for any and all such purposes, as in their judgment and discretion may be deemed necessary and best for the interests of any of my said Estate, and that of its Beneficiaries, my children and their descendants, as herein provided,—and, generally, to do any and all things, in the premises, which I would, or could do if living, and personally present and acting; * * * ."

Section II of said paragraph provides that at and after the expiration of the trust period "my trustees shall and will thereupon and thereafter, as soon as reasonably possible, finally partition, set apart, in severalty, convey and deliver" to the devisees named in her will as directed therein.

Section III provides:

"Under the power to manage and control, hereinbefore given to the Trustees named in this Will, the survivor or survivors of them, shall also be, and is, embraced Power, in their judgment and discretion, to keep up and to make, all necessary improvements, or changes, on the lands, or with any of the personal trust property, herein devised and bequeathed to them, and Power to employ any and all necessary persons,—specially to include all such of themselves, as in their judgment, may be for the best interests of my said estate, to carry on any such business as they may deem it proper to carry on, or in connection with, the lands, or personal property, or any part thereof, which they are empowered to manage and control, and generally, to do all such acts in the premises, in reference to, and with said property, or any part thereof, as an owner, similarly situated, *might do, not inconsistent with the provisions of this will;* and any and all of the expenses incurred by them, in such control and management, as well as a reasonable compensation for their services, * * * shall be first paid and retained, by them, out of the net receipts of the said trust estate, as the same may, from time to time, become necessary, or accrue;

"Shall the trustees above named, the survivor or survivors of them, at any time, deem it advantageous to do so, then they, or he, are hereby fully empowered and directed to sell a part, or all, of the property, real or personal, herein devised and bequeathed to them, in trust, or to sell any part thereof, and the proceeds, or any part thereof, arising therefrom, to invest, by way of loan, or otherwise, in such interest-bearing securities, mortgages, annuities, life insurance, or otherwise, as in the judgment of themselves, the survivors or survivor of them, may be deemed advantageous,— and also, to purchase any and all such property, real and personal, as they, or him, in their, or his, judgment and discretion, may deem necessary or advantageous, for the purposes of this said trust;

"*Provided, However, that said trustees, the survivors or survivor of them, shall not be held liable for, or in any manner responsible, in the discharge of any of their duties, or acts in the premises, or for the failure to invest, or the investment of, any of the trust funds, which may at any time, come into their, or his, hands, under any of the provisions of this will;* * * *

"And, if at any time, during the lifetime of said Robert H. Kleberg, Sr., there shall arise, or be any difference of opinion, between my trustees, as to any of their duties or acts, as such trustees, then and in that event, the decision of said Robert J. Kleberg, Sr., thereon, shall be final and binding, upon all of such trustees,—but should he then be dead, the decision of a then majority, of said trustees, shall be final and binding, in the premises; * * * ." (Italics supplied.)

Par. Twelve of the will affirms:

"This, my last will, and all the bequests, devises and trusts, therein provided for, or created, and the entire distribution of all my property as herein made, as well as the keeping of the entire estate intact until my death, is in full and careful accord with the expressed wishes and desire of my beloved husband, as well as myself, and I, therefore, most lovingly and earnestly, ask my children, in loving harmony to, in all things, aid my Executors and Trustees in carrying out the wishes of their father and myself, as expressed in this, my last will and testament."

Plaintiffs treated this case below, and they treat it here, as though the mere filing of their suit put the trustees in the wrong and on the defensive, put upon them not only the burden of showing what they did in the course of their management of the trust estate and in respect of its partition, but that the plaintiffs' charges were false and unfounded. That this is not so is so well settled as not to require the citation of authority. The trustees have in their support the general principle that it will be presumed that persons charged with the performance of a duty have discharged it fairly and in accordance with their commission until evidence is introduced which overthrows this presumption. More than this, the will makes plain the intent and purpose of the testatrix to leave to the discretion of her trustees, except where the will made express provision otherwise, the time and manner of the doing of the things she had charged them with doing. Furthermore, the will expressly authorized them, subject only to the limitation that they must not act inconsistently with it, to act, with respect to the terms of the will and the power conveyed, as though they were the owners of the property she had conveyed to them in trust. All questions then of the correctness of the accounting and the partition must be approached and examined as though Mrs. King, herself, had made them under the will, and they both must be sustained and approved unless a showing is made that there has been fraud, overreaching or failure to comply with the will's plain terms. In view then of the explicit language of the will, and that all of the others, except plaintiffs, were satisfied with the conduct of the trusteeship and had accepted the partition, the burden rested on plaintiffs to show that they had been deprived by the trustees of benefits conferred by the will. In the light of these considerations and of the full and detailed nature of the accounting made by the trustees, we reject appellants' primary claims both as to the partition and the accounting, that plaintiffs were entitled to a decree for failure of defendants to disprove the charges plaintiffs made.

A second question arising both as to partition and accounting, and which must be answered at the threshhold, is the amount of the interest in the residuary estate which plaintiffs are entitled to under Mrs King's will. The District Judge determined that it was 9/64. Appellants say that 12/64 is the right fraction. This question arises because when effect is given to Section 2,[4] Paragraph 8 of the will as it is written, Mrs. King died intestate as to one-fourth of her residuary estate, whereas, if effect is given, as plaintiffs contend it should be, to the intent expressed in the opening sentence of the will, "to dispose of all prop-

---

[4] Section 2 of Paragraph 8 of the will, providing for partition by the executors at the end of the trust period of all of testatrix's property and estate, directed them to partition and set apart in severalty and detail "all of my said then property and estate to my said children or their descendants, respectively, as the case may be, in the following parts or shares of my said property and estate:" First, to Richard King, (a), (b), (c), (d), (e) and (f) described lands, fences and appurtenances, and vendor's lien notes belonging thereto. Then followed (g) "one equal one-fourth of all the money, notes, stocks, bonds, * * * not herein otherwise devised or bequeathed, which may at the time of such final partition of my estate then remain in the hands of the trustees subject to partition," and (h) "one equal one-fourth of all other property not herein enumerated which may remain in their hands."

Subdivision 2 gave to Alice Kleberg (a), (b) and (c) described lands, fences, vendor's lien notes, etc., and in (d) and (e), as to Richard King, one equal one-fourth of all money, notes, stocks, bonds, and all other property not otherwise devised or bequeathed.

Subdivision 3 gave to Henrietta M. Page, etc., one equal one-half and to Richard, Edwin, Alice and Elizabeth Atwood, in equal shares "the other equal one-half of all of the following described real or mixed property, to-wit": (a), (b), and (c) described lands, the fences, houses, etc., and the vendor's lien notes pertaining to said land. Then followed (d) "one equal one-fourth of all of the money, notes, stocks, * * * not herein otherwise specifically devised," which may at the time of final partition be in the hands of the trustees", and (e) "one equal one-fourth of all other property not herein otherwise specifically enumerated or devised" which the trustees may hold subject to final partition.

erty, rights, and estate of whatsoever kind and wheresoever situated, which I may own, possess, or be in any manner entitled to, at the time of my death," and in the authority the will gave to the trustees to partition, and section two is read to conform to this general intent, she did not. On the face of the will, the difficulty arises out of the fact that whereas the testatrix had four children, or their descendants, to provide for, she made provision for them in Section 2, Paragraph 8 not in four but in three numbered subdivisions. The first gave to Richard King specific properties and one-fourth of the undevised residue. The second gave to Alice Kleberg specific properties and one-fourth of the undevised residue. The third gave to the Atwood and Baldwin children together one-half to each, described properties and one-fourth of the undevised residue of the estate. Appellants argue that to give effect to the intent of the testatrix, the Atwood and Baldwin one-fourth residuary clauses must be read as though the words "to each" appeared before one-fourth, that not to do so is to construe the will as authorizing the trustees to partition three-fourths of her residuary estate, leaving one-fourth unprovided for, whereas it is plain from the will that she intended to dispose by it of, and to authorize her trustees to partition, every property and right she had.

While we see and feel the force of appellants' arguments, we do not think we are at liberty to enlarge the devises Mrs. King made to the Baldwins and Atwoods by rewriting or reading the will as we would have to do if we gave effect to appellants' contention. Whatever may be the law elsewhere, we think it is settled in Texas that in the face of clear and positive language of the testator in making specific devises, courts may not speculate on, to give effect to, a supposed intent of the testator contrary to that expressed in the language used, but must construe and give effect to it as written.[5] We so decided in Atwood v. Kleberg, 5 Cir., 133 F.2d 69. We are not prepared to depart from the view there expressed.

When at the time of the partition the residuary estate was divided and the debts were apportioned, all of the beneficiaries, including the appellants, were taking this same position as to the construction of the will. Mrs. Kleberg took less than she would have been entitled to as the assignee of Mrs. Page and Mrs. Baldwin under the construction now contended for by appellants. Besides, the whole contention is stripped of significance when it is found that in making the deeds in partition, the trustees charged the parties receiving the residuary estate with debts of the estate to the extent of the full value of the residuary estate, apportioning them:

Against the King Ranch, corporation ................. $2,507,842.87

Against Richard King and his sisters ................... $1,032,638.78

and against the three Atwood shares a total of only..$ 480,122.45

The doctrine of owelty[6] is well recognized in Texas, and it was within the discretion of the trustees to set aside all of the residuary estate to one party in partition, charging that party with an amount of the debts equal to the full value thereof.

The other complaints made by appellants in respect of the partition phase of these appeals present not questions of law but of fact on which both the Master and the District Judge have found adversely to them. We have examined the record as to each of the matters complained of and have found no basis for reversing the findings made below. It would serve no useful purpose to discuss the various complaints in detail. It will be sufficient, after dealing briefly with some of the major ones to say of all the complaints that under Rule 52 of Rules of Civil Procedure, "Findings of fact shall not be set aside unless clearly erroneous," and Rule 53(e)(2), "The court shall accept the master's findings of fact unless clearly erroneous," we find no basis in the record for disapproving the Master's findings or setting aside those of the District Judge.

---

5 McMullen v. Sims, Tex.Com.App., 37 S.W.2d 141; Brooking v. McCutcheon, Tex.Civ.App., 135 S.W.2d 197.

6 Sayers v. Pyland, 139 Tex. 57, 161 S.W.2d 769, 140 A.L.R. 1164.

■ Of the major complaints, the one most argued is that the purchase of the Page and Baldwin interests must be regarded as made not by Mrs. Kleberg for her own benefit but by the trustees for the benefit of the estate. Every fact in the record is to the contrary of this contention. It is true that in making the purchases, Mrs. Kleberg was aided by the trustees, but it is not true that the trustees intended to, or did, make the purchase or that in assisting Mrs. Kleberg they did anything contrary to the terms of their trust. If, instead of the purchase having been a wise one, it had turned out to be unwise, plaintiffs would have been most shocked at the suggestion that the loss should be that of the estate and not Mrs. Kleberg. The matters connected with these purchases were not done in the dark. The evidence shows that the plaintiffs knew and understood that Mrs. Kleberg was the purchaser and not only made no objection to her making the purchases, but, on the contrary, some of the plaintiffs at least made vigorous efforts to sell their interests to her.

Other points vigorously pressed and argued have to do with the actions of the trustees in connection with Mrs. Kleberg's Santa Gertrudis 30,000 acre headquarters ranch, the Encino and Stillman ranches owned by Robert L. Kleberg, as trustee for the Kleberg family, and with questions of the ownership of the cattle and the farm and ranch machinery and equipment on the Santa Gertrudis ranch.

■ We agree with plaintiffs that the will did not authorize the trustees to act partially in favor of some members of the family against others, yet we disagree with them that the evidence shows any partial acts or that anything was done in respect to these Kleberg properties contrary to the terms of the will and the interests of the estate or unduly to favor them.

■ The remaining complaints seek a review of the facts as to whether plaintiffs received in the partition properties to which they were entitled under Mrs. King's will and a fair share in the division of the residuary estate. Nothing brought forward by them or called to our attention furnishes any basis for our overturning or disagreeing with the findings of Master and Judge.

■ Finally, appellants vigorously urge upon us that the costs were not fairly taxed. They insist that none of the costs should have been taxed against them but all costs should have been taxed against the trustees; if not, the suit being for an accounting and partition, the costs should have been taxed against the estate and thus borne by the parties in proportion to their interests in it. We think it clear that in an ordinary partition suit the costs should be divided among the parties in proportion to their interests. But this is not such a suit. This is a suit in which, under the directions of a will conferring the broadest kind of discretion, trustees have made a partition which has been accepted by all but these three plaintiffs, and they have come into court incurring heavy costs in an endeavor to set that partition aside. In these circumstances they are in the position of the ordinary adversary litigant, who in order to prevail must establish his claims that he has suffered injury. In this case the actions of the trustees were approved with one exception, their partition confirmed in the court below, and if it were not for the judgments in appeals Nos. 11,-625 and 11,658, 5 Cir., 163 F.2d 104, which arose in Equity No. 102, all of the costs in these suits should have been taxed against the plaintiffs. Because of that judgment, however, plaintiffs have a valid claim to recovery of at least part of the costs, and in view of the fact that that recovery was a considerable one, the trial court was justified in taxing part of the costs against the defendants in that suit. While in law if the plaintiff recovers any part of his demand, he recovers his costs, in equity the rule is different. Costs are there apportioned as seems just and equitable. In view of the fact that the bringing of the suit obtained for the plaintiffs a recovery of nearly $150,000, of which the other defendants would have had the benefit of a part but for the suit, we are of the opinion that the costs in Equity No. 102 and in Ancillary No. 74 were wrongly taxed and that they should have been taxed one-fourth to plaintiffs and three-fourths to defendants.

The appeal in No. 11,718 relates exclusively to an accounting of Mrs. King's trust estate. The questions presented may be divided into two groups: the interpretations made by the trustees of their powers and functions under the will and the actual administration of the trust by the trustees.

Both of these groups we must approach in the light of what we have already said: Mrs. King, in general terms, left to the discretion of her trustees the time and manner of the doing of the things she had charged them with doing. And she authorized them to act as though they were the owners of the property she had conveyed except in instances where the terms of the will provided to the contrary. Unless appellants show fraud, overreaching, or a failure to comply with the will's plain terms, the trustees should be sustained. The Master and the trial court found in favor of the trustees. After examining these findings in the light of the objections made by appellants, we have concluded that substantial evidence supports them.

Many of appellants' objections have to do with acts of the trustees in the administration of the trust, which appellants say were overreaching or oversteping of authority on their part or of personal benefit to them. Whether this was so, in most instances, was a question of fact which has been resolved against appellants by the court below. The trust estate was large and covered many and varied interests. Its administration required the operation of, or participation in the operation of, ranches, banks, experimental farms, cotton gins, cotton mills, mercantile establishments, and allied and unallied businesses. The testatrix, doubtlessly realizing the scope of these functions, deliberately made the terms of the trust sufficiently broad to give to the trustees extensive latitude of authority and discretion.

In the light of presently known results, some of the acts of the trustees might be censured. They undoubtedly made errors, but the record indicates, and the court below found, that these were errors of judgment; under the express language of the will, no action may be based thereon.

Had we been the triers below, our conclusions on some of the items in the accounting might have been different from those of the Master and of the trial court; however, such findings are not clearly erroneous, and we may not disturb them.[7]

With the interpretations of the administrative provisions of the testamentary trust, including remuneration to be paid to the trustees, we find ourselves in full accord. We find no merit in appellants' contentions with respect thereto.

We are not in accord, however, with the action of the court below in assessing all the costs of the accounting to the appellants. The accounting covered a long period and was most complicated. Many administrative acts of the trustees were such as, without explanation, would warrant the appellants in suing for an accounting; and, as we have said above, had we been the triers, we might have reached conclusions contrary to some of those reached below. Appellants' suit, therefore, for an accounting was not without warrant. While the trial court may allocate the costs of the final accounting as it thinks best in view of the circumstances of the case,[8] the general rule, we think in this case, should have been applied: the costs should be taxed to the body of the trust estate.[9]

The judgments appealed from in No. 11,704 and No. 11,717 in this court, Equity No. 102 and Ancillary No. 74 in the trial court, are amended so as to tax the costs in the court below one-fourth to appellants, plaintiffs in that court, and three-fourths to appellees, defendants in that court, and as amended are affirmed. The judgment appealed from in No. 11,718 in this court, Equity No. 74 in the trial court, is amended by taxing costs in the trial court to the trust estate, and as so amended, the judgment is affirmed.

Amended and affirmed.

---

[7] Federal Rules of Civil Procedure, rule 52(a).

[8] 4 Bogert, Trusts and Trustees, § 805, p. 2337.

[9] Ibid, § 971, p. 2833.

WALLER, Circuit Judge (concurring in part and dissenting in part).

I concur in the main opinion in all respects except as to the allowance to the three executors, who were also trustees under the will, of compensation in the amount of $300,000. The will provided, in capital letters with underscoring, as follows:

"* * * such Trustees, shall receive * * * as and to be their FULL AND ONLY COMPENSATION, as such Trustees, a sum, per annum, to be equally divided between them, equal to ten (10%) per cent. of all of the net revenues, or monies, which may come into their hands, annually, as such trustees, * * *"

The will, in the paragraph appointing the three executors, provided:

"* * * I do now hereby Direct, and it is my Will that, no other action shall be had in the County Court or in any court having jurisdiction in matters of probate, in relation to my estate, or the settlement thereof, than the probating and recording of this, my Last Will, and the return and filing of an Inventory and Appraisement, and List of Claims, of my Estate; and I further Direct that, the said Executors of this, my Last Will, hereinbefore named, shall not be required to give any bond."

From the foregoing, therefore, the duties of the executors were restricted to probating and recording the will, filing an inventory and appraisement, and list of claims. They were not required to render any accounting nor to give any bond. The operation and management of the estate was entirely in the hands of the trustees.

Moreover, in the Federal estate tax return which was sworn to by the executors, they only claimed as fees to the executors the sum of $110,394.39. The addition of the sum of $189,605.61 seems to be somewhat of an afterthought. I think that the fees allowed the executors are grossly excessive in view of the provisions of the will, the narrowness of their duties, and the compensation received by them as trustees and as employees of the Trust Estate. I would, therefore, remand the case solely for the purpose of having the Court below fix the fees of the executors at an amount that would be but nominal in comparison to the fees which the trustees agreed upon and which the Court allowed to stand.